# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
November 6, 2013 Session

## GEORGE ERNEST SKOUTERIS, JR. v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

**Direct Appeal from the Shelby County Chancery Court**
**No. CH12117211      Ben H. Cantrell, Senior Judge**

---

**No. W2013-01254-SC-R3-BP - Filed February 21, 2014**

---

This is a direct appeal of an attorney disciplinary proceeding involving six complaints of professional misconduct. The trial court affirmed the hearing panel's decision that the attorney had violated multiple Rules of Professional Conduct and should be disbarred from the practice of law. After review of the evidence presented and the applicable law, we affirm the judgment of the trial court.

**Tenn. Sup. Ct. R. 9, § 1.3; Judgment of the Chancery Court Affirmed**

SHARON G. LEE, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., and JANICE M. HOLDER, CORNELIA A. CLARK, and WILLIAM C. KOCH, JR., JJ., joined.

Robert L. Green, Memphis, Tennessee, for the appellant, George Ernest Skouteris, Jr.

Krisann Hodges, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

## OPINION

### I.

George Ernest Skouteris, Jr. was licensed to practice law in Tennessee in 1988. In the years 1997, 2000, and 2003, Mr. Skouteris was disciplined by the Board of Professional Responsibility ("the Board"). On July 18, 1997, Mr. Skouteris received an informal admonition for withholding money from two clients' settlement proceeds for payment of their medical bills, issuing worthless checks to the medical providers, and being dilatory in making payment to the medical providers until a complaint was filed with the Board. On July 10, 2000, Mr. Skouteris was publicly censured for withholding funds from clients' settlement proceeds for payment to medical providers, failing to pay

the medical providers, and failing to maintain the clients' settlement proceeds in his trust account. He was ordered to attend a Board ethics workshop; to complete six additional hours of continuing legal education in ethics for the year 2000; to make himself available to speak at three seminars to explain how he mismanaged his trust account; to have his trust account monitored for the year 2000; and to submit quarterly reports to disciplinary counsel during that period. On November 21, 2003, Mr. Skouteris received an informal admonition when he misstated the date of a client's injury on a civil warrant that was not timely filed, failed to disclose his neglect to his client, and failed to withdraw from the case when he was no longer providing legal services to the client.

This appeal arises from three Petitions for Discipline filed against Mr. Skouteris alleging six complaints of misconduct occurring from 2007 to 2011. The Board's first Petition, filed on August 26, 2010, alleged misconduct arising from Mr. Skouteris's representation of Tiffany Pruett, Valerie Cox, Gary Crawford, and Jacqueline Baker. The second Petition, filed on April 6, 2011, alleged misconduct by Mr. Skouteris arising from his representation of Danzel Davis. On January 23, 2012, a third Petition was filed alleging misconduct arising from Mr. Skouteris's representation of Justin Levick.

On March 28, 2012, a hearing panel ("the Panel") appointed by the Board pursuant to Tennessee Supreme Court Rule 9, section 8.2 heard evidence on the petitions.[1] On May 23, 2012, the Panel issued its judgment finding that Mr. Skouteris should be disbarred for violating Tennessee Supreme Court Rule 8, Rules of Professional Conduct 1.1, 1.3, 1.4(a), 1.4(b), 1.5(c), 1.15(a), 1.15(c), 1.16(d), 8.1(b), 8.4(a), 8.4(b), 8.4(c), and 8.4(d). The Panel also concluded that as a condition precedent to any subsequent reinstatement to the practice of law, Mr. Skouteris should be required to make restitution to Ms. Pruett and Ms. Cox.

Pursuant to Tennessee Supreme Court Rule 9, section 1.3, Mr. Skouteris appealed the Panel's decision to the Shelby County Chancery Court (the "Trial Court"). On February 4, 2013, the Trial Court conducted a trial on the transcript and the record of the Panel proceedings. On March 6, 2013, the Trial Court issued its Memorandum Opinion affirming the Panel's findings and recommendations. Mr. Skouteris appeals the decision of the Trial Court.

## II.

The Supreme Court of Tennessee is the source of authority of the Board of Professional Responsibility and all its functions. *Brown v. Bd. of Prof'l Responsibility*, 29 S.W.3d 445, 449 (Tenn. 2000). As a part of our duty to regulate the practice of law in

---

[1] On August 30, 2013, this Court adopted substantial changes to Supreme Court Rule 9, which governs the discipline of attorneys. These changes went into effect on January 1, 2014. Because this case arose prior to January 1, 2014, it falls under the version of Supreme Court Rule 9 that was in effect before the 2014 revisions.

Tennessee, we bear ultimate responsibility for enforcing the rules governing our profession. *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 469-70 (Tenn. 2003). We review judgments under our "inherent power and essential and fundamental right to administer the rules pertaining to the licensing of attorneys." *Hughes v. Bd. of Prof'l Responsibility*, 259 S.W.3d 631, 640 (Tenn. 2008) (citing *In re Burson*, 909 S.W.2d 768, 773 (Tenn. 1995)).

When reviewing a hearing panel's judgment, a trial court must consider the transcript of the evidence before the hearing panel and its findings and judgment. Tenn. Sup. Ct. R. 9, § 1.3. On questions of fact, the trial court does not substitute its judgment for that of the hearing panel as to the weight of the evidence. *See Bd. of Prof'l Responsibility v. Allison*, 284 S.W.3d 316, 323 (Tenn. 2009). Any modification to a hearing panel's decision must be based on one of the enumerated factors included in Tennessee Supreme Court Rule 9, section 1.3. *See Bd. of Prof'l Responsibility v. Love*, 256 S.W.3d 644, 652 (Tenn. 2008). Tennessee Supreme Court Rule 9, section 1.3 provides that a trial court:

> may reverse or modify the [hearing panel's] decision if the rights of the petitioner have been prejudiced because the [hearing] panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Sup. Ct. R. 9, § 1.3.

Our standard of review on appeal is the same as that of the trial court. *Hoover v. Bd. of Prof'l Responsibility*, 395 S.W.3d 95, 103 (Tenn. 2012).

## III.

We begin our review with a summary of the evidence presented to the Panel and reviewed by the Trial Court.

### A. Pruett Case

In October 2005, Tiffany Pruett was seriously injured in an automobile accident. Mr. Skouteris visited Ms. Pruett in the hospital. After Ms. Pruett was released from the hospital, she agreed for Mr. Skouteris, who had previously handled some minor legal matters for her, to represent her in her claim for damages. According to Ms. Pruett, Mr. Skouteris agreed to represent her at no charge because he was concerned for her and

her son. Mr. Skouteris, however, testified that Ms. Pruett orally agreed to pay him a one-third contingency fee. Mr. Skouteris admitted that there was no written contingency fee agreement.

In March 2007, Mr. Skouteris settled Ms. Pruett's claim for $197,480. On April 16, 2007, Mr. Skouteris deposited Ms. Pruett's settlement check in his trust account. According to Ms. Pruett, Mr. Skouteris did not tell her about the settlement until several months later and did not provide her with any settlement documents. When Mr. Skouteris advised her of the settlement, he told her he would pay her medical bills and send her the remaining settlement funds. In June 2007, instead of disbursing the remaining balance of the settlement to Ms. Pruett, Mr. Skouteris began depositing payments in small amounts—such as $1000 or $2500—into Ms. Pruett's bank account on an irregular basis. Mr. Skouteris testified that Ms. Pruett requested this method of distribution. Ms. Pruett, however, testified that she never agreed to accept periodic disbursements, was strapped for money, and repeatedly requested that the entire balance be sent to her.

Mr. Skouteris did not maintain Ms. Pruett's funds in his trust account. The ending balance in Mr. Skouteris's trust account for the time period spanning April 13, 2007, through May 14, 2007, was $204,662.28, which included Ms. Pruett's $197,480 settlement deposit. The ending balance of Mr. Skouteris's trust account on June 14, 2007, was less than $197,480, even though Mr. Skouteris had not disbursed any of Ms. Pruett's settlement proceeds. In the following months, the balance in Mr. Skouteris's trust account declined even further below the total amount of Ms. Pruett's settlement proceeds. Mr. Skouteris admitted that as of June 13, 2008, he did not have sufficient funds in his trust account to cover his obligations to Ms. Pruett. Two of the payments that Mr. Skouteris made to Ms. Pruett were drawn on Mr. Skouteris's personal checking account, rather than his trust account. Mr. Skouteris continued disbursing Ms. Pruett's settlement proceeds to her in small increments from July 2007 to August 2008.

As of June 2008, no disbursements had been made from Ms. Pruett's settlement proceeds other than the payment of one of her medical bills in November 2007 and the periodic deposits into her bank account. Mr. Skouteris testified that he was holding approximately $80,000 in his trust account in order to ensure payment for a hospital lien, yet the balance in his trust account was not sufficient to pay the hospital lien. Ms. Pruett testified that Mr. Skouteris told her on several occasions that all of her other medical bills had been paid. Ms. Pruett discovered that her medical bills had not been paid when she applied for a student loan and learned that her credit rating had been adversely affected by Mr. Skouteris's failure to pay her medical providers.

Ms. Pruett testified that she had repeatedly asked Mr. Skouteris to send her proof of the payments that he had allegedly made to her medical providers, but he did not do so. In July 2008, Ms. Pruett became frustrated with Mr. Skouteris's lack of

communication regarding the status of her settlement. She sent him an e-mail in which she requested a face-to-face meeting with him, and also demanded that he produce documentation of her settlement balance and disbursements to her medical providers, as well as an explanation regarding the hospital lien. Ms. Pruett met with Mr. Skouteris on July 30, 2008, but he did not provide her with any of the requested information.

As of August 2008—approximately sixteen months after Mr. Skouteris received and deposited Ms. Pruett's $197,480 settlement—Mr. Skouteris had paid Ms. Pruett $96,518.05 and her medical providers $7,944.29. There should have been a balance of at least $93,017.66 in Mr. Skouteris's trust account to cover his remaining obligations to Ms. Pruett, her medical providers, and any attorney fees he was owed. Mr. Skouteris's trust account, however, contained a balance of only $1,361.51.

This same month, Ms. Pruett hired attorney Mark Vorder-Bruegge to assist her in recovering her full settlement proceeds from Mr. Skouteris. Mr. Vorder-Bruegge corresponded several times with Mr. Skouteris about Ms. Pruett's claim, and on November 21, 2008, he made a formal written demand to Mr. Skouteris that he immediately disburse the entire remaining balance of Ms. Pruett's settlement funds. Mr. Skouteris did not comply with this demand. On September 15, 2009, Ms. Pruett sued Mr. Skouteris. Mr. Skouteris did not respond to the lawsuit, and on September 27, 2010, a default judgment was entered, finding that Mr. Skouteris had committed the intentional tort of conversion of Ms. Pruett's property and money, and that Mr. Skouteris had lied to Ms. Pruett regarding the payments due to her medical providers by assuring her that the bills were paid when they were not. The default judgment ordered Mr. Skouteris to pay $93,017.66 in compensatory damages and $300,000 in punitive damages. Mr. Skouteris moved to set aside the default judgment, but the motion was denied and no appeal was taken. As of the date of his hearing before the Panel, Ms. Pruett's judgment against him remained unsatisfied.

On July 3, 2009, Mr. Skouteris sent Mr. Vorder-Bruegge a check for $32,018.05, which Mr. Skouteris deemed to be the approximate amount due Ms. Pruett. He arrived at this amount by taking the amount of her settlement ($197,480), deducting the periodic disbursements that he had made to her ($96,518.05), deducting the payments that he had made to her medical providers ($7,944.29), and deducting a one-third contingency attorney fee after subtracting Ms. Pruett's medical expenses from her settlement ($56,781.57).[2] According to Mr. Vorder-Bruegge and Ms. Pruett, this was the first time that Mr. Skouteris had claimed that he would be charging Ms. Pruett an attorney fee. Mr. Skouteris's trust account did not have a sufficient balance to cover the $32,018.05 check, but the bank honored the check.

---

[2] Based on this formula, the settlement check should have been in the amount of $36,236.09, rather than $32,018.05. Mr. Skouteris testified that $32,018.05 was the "ballpark" amount in dispute.

-5-

When asked to provide an explanation for his failure to maintain Ms. Pruett's settlement funds in his trust account, Mr. Skouteris testified:

> Well, I mean, I had been going through a tough time, personal-wise. So I think it affected my -- I mean I think I'm still a good lawyer, not such a great accountant and at that point in time I had lost both of my parents and went through a divorce. And I think I just didn't take care of my business well. I wasn't as precise in taking care of [t]his stuff the way I should have.
>
> . . . .
>
> In late 2007, early 2008, I tore my Achilles tendon and had to have surgery on that. So I was out for about a month. Then I was on [crutches] and such for about three months.

## B. Cox Case

Mr. Skouteris represented Valerie Cox in a claim for damages arising out of an August 25, 2008 automobile accident. Mr. Skouteris settled the claim for $12,000. On May 19, 2009, he deposited Ms. Cox's settlement check into his operating account, rather than his trust account. Mr. Skouteris admitted this was a mistake on his part.

Before receiving Ms. Cox's settlement check, Mr. Skouteris learned that the State of Florida asserted a lien for unpaid child support against Ms. Cox's funds in an amount in excess of $14,000. In light of the outstanding Florida lien for child support, Mr. Skouteris testified that he sought the advice of twenty attorneys and the Board concerning how to deal with Ms. Cox's settlement proceeds. After seeking this advice, Mr. Skouteris did not disburse the balance of Ms. Cox's settlement to Ms. Cox or the State of Florida. Nor did he file an interpleader action to allow a court to determine how the funds should be disbursed.

As of the time of the Panel hearing, Mr. Skouteris had not disbursed the settlement proceeds. Mr. Skouteris testified that he had kept the money because Ms. Cox wanted to avoid having to satisfy the State of Florida's child support lien. Mr. Skouteris acknowledged, however, that he only offered to relinquish Ms. Cox's funds after Ms. Cox filed a complaint against him with the Board.

## C. Crawford Case

Mr. Skouteris represented Gary Crawford on a contingency fee basis in a claim for damages arising out of an automobile accident. Mr. Skouteris admitted that there was no written contingency fee agreement signed by Mr. Crawford. Mr. Skouteris settled Mr.

Crawford's claim for $6,500 and deposited the settlement check in his trust account on June 11, 2008. The ending balance of Mr. Skouteris's trust account as of August 15, 2008, was $1,361.51, but Mr. Skouteris had not distributed any funds to Mr. Crawford. Mr. Crawford's settlement proceeds were disbursed on June 27, 2009. According to Mr. Skouteris, he delayed distributing Mr. Crawford's settlement proceeds for more than a year because Mr. Crawford disputed payment of some of his medical bills. Mr. Skouteris admitted that he failed to respond to the Board's request for information in a timely manner.

### D. Baker Case

Mr. Skouteris represented Jacqueline Baker, a minor, in a personal injury action resulting from an automobile accident that occurred in November 2007. Ms. Baker's case was settled for $100,000, and on September 18, 2008, the settlement check was deposited in Mr. Skouteris's trust account. The court order approving the settlement provided that the proceeds would be distributed as follows: $30,000 to Mr. Skouteris for his attorney fee; $18,423 to Blue-Cross Blue-Shield; $10,900 to Ms. Baker's father for her dental care; and the balance of $40,677 to Ms. Baker's father for her use and benefit. Mr. Skouteris made all of these disbursements except for the balance of $40,677, which he retained at the request of Mr. Baker. Before Mr. Skouteris had finished disbursing all of Ms. Baker's settlement proceeds, in July 2009, the balance of Mr. Skouteris's trust account fell to –$3,360.69.

Mr. Skouteris issued payments on Ms. Baker's behalf for educational expenses totaling $1,049, and when Ms. Baker turned eighteen years old in August 2009, Mr. Skouteris also made payments to her in August and September 2009 of $3,500 and $1,000, respectively. Thus, in October, 2009, Mr. Skouteris still owed Ms. Baker $35,128. As of October 15, 2009, the balance of Mr. Skouteris's trust account was $1,603.89.

In January 2010, the balance of Mr. Skouteris's trust account fell even further to $982.38. On February 4, 2010, Mr. Skouteris wrote a check to Ms. Baker in the amount of $17,564, reflecting one-half of the outstanding $35,128 balance that he owed her. Mr. Skouteris was charged a fee for insufficient funds on that check, but the bank honored it. As of February 12, 2010, Mr. Skouteris held only $131.38 in his trust account, but still owed $17,564 to Ms. Baker. On February 26, 2010, Mr. Skouteris wrote another check to Ms. Baker for the remaining $17,564. The only deposits made to Mr. Skouteris's trust account during the period from January until March 2010 were settlement proceeds from other clients; thus, the February 26, 2010 check to Ms. Baker cleared due to deposits belonging to other clients. Ms. Baker eventually received her full settlement from Mr. Skouteris. Mr. Skouteris admitted that he failed to respond to the Board's request for information in a timely manner.

*E. Davis Case*

Mr. Skouteris represented Danzel Davis, a minor, in a premises liability matter. Mr. Skouteris settled the case and received two settlement checks totaling $9,000, which he deposited into his trust account on June 23, 2009, and June 30, 2009. The balance in his trust account throughout the month of June was a negative balance. The account statement for July 14, 2009, reflects an ending balance of -$3,360.69.

Mr. Skouteris paid Mr. Davis $1,000 on August 19, 2009. On October 30, 2009, because Mr. Davis had reached the age of majority, an Order of Dismissal was entered in Mr. Davis's case providing that he was entitled to receive the remainder of his funds without judicial oversight. Mr. Skouteris did not disburse any additional proceeds to Mr. Davis until August 19, 2010, when Mr. Skouteris wrote Mr. Davis a check for $4,250. In addition to the negative balance in Mr. Skouteris's account on July 14, 2009, the account statements for January 2010, February 2010, and April 2010 all reflect a total balance of less than $4,250. Mr. Skouteris testified that he doubted that he had a written contingency fee agreement with Mr. Davis, and none was produced. Mr. Skouteris admitted that he failed to respond to the Board's request for information in a timely manner.

*F. Levick Case*

Mr. Skouteris represented Justin Levick in a personal injury claim arising out of an automobile accident in August 2010. Mr. Skouteris did not provide Mr. Levick with a written contingency fee agreement. Mr. Skouteris settled Mr. Levick's case for $3,000 and deposited Mr. Levick's settlement check in his trust account on November 12, 2010. At one point during the October 15 to November 15, 2010 statement period—during which time Mr. Skouteris held Mr. Levick's funds, but before any disbursements had been made—the balance in Mr. Skouteris's trust account was –$1,443.50. On August 15, 2011, the day that Mr. Levick filed a disciplinary complaint with the Board, Mr. Skouteris disbursed $1,970 in settlement proceeds to Mr. Levick.

**IV.**

A.

Based on these facts, the Panel found that Mr. Skouteris violated Rules of Professional Conduct 1.1, 1.3, 1.4(a), 1.4(b), 1.5(c), 1.15(a), 1.15(c), 1.16(d), 8.1(b), 8.4(a), 8.4(b), 8.4(c), and 8.4(d).[3]

---

[3] Rule 1.1: A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

Rule 1.3: A lawyer shall act with reasonable diligence and promptness in representing a client.

Rule 1.4: (a) A lawyer shall:

    . . .

    (3) keep the client reasonably informed about the status of the matter;

    (4) promptly comply with reasonable requests for information;

    . . .

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Rule 1.5(c): . . . A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial, or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

Rule 1.15: (a) A lawyer shall hold property and funds of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property and funds.

. . .

(c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

Rule 1.16(d): A lawyer who is discharged by a client, or withdraws from representation of a client, shall, to the extent reasonably practicable, take steps to protect the client's interests. Depending on the circumstances, protecting the client's interests may include:
(1) giving reasonable notice to the client;
(2) allowing time for the employment of other counsel;
(3) cooperating with any successor counsel engaged by the client;
(4) promptly surrendering papers and property to which the client is entitled and any work product prepared by the lawyer for the client and for which the lawyer has been compensated;
(5) promptly surrendering any other work product prepared by the lawyer for the client, provided, however, that the lawyer may retain such work product to the extent permitted by other law but only if the retention of the work product will not have a materially adverse affect on the client with respect to the subject matter of the representation; and
(6) promptly refunding any advance payment of fees that have not been earned or expenses that have not been incurred.

Rule 8.1(b): [A] lawyer . . . in connection with a disciplinary matter, shall not . . . fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by RPC 1.6.

Rule 8.4: It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;

In determining that disbarment was the appropriate sanction, the Panel analyzed the relevant aggravating and mitigating factors applicable to Mr. Skouteris's case, and consulted the *ABA Standards for Imposing Lawyer Sanctions* ("ABA Standards"). *See Allison*, 284 S.W.3d at 327 ("[T]he American Bar Association's Standards for Imposing Lawyer Sanctions . . . have been adopted by the Board for disciplinary matters."). First, the Panel found that Mr. Skouteris's misconduct in the above cases violated ABA Standards 4.11, 4.41(b), 4.41(c), 4.61, 5.11(b) and 7.1—each of which provides that disbarment is generally the appropriate penalty.[4] Next, pursuant to ABA Standard 9.22, the Hearing Panel found that each of the following aggravating factors justified a further increase in Mr. Skouteris's disciplinary sanction:

a.   His action evidenced a dishonest and selfish motive;
b.   His conduct evidenced a pattern of misconduct;
c.   He engaged in multiple offenses;
d.   He refused to acknowledge the wrongful nature of his conduct;
e.   His victims were particularly vulnerable in that they were his clients and relied on him to represent and care for their interest;
f.   He had substantial experience in the practice of law; and
g.   He evidenced an indifference to making restitution.

---

(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice[.]

By order filed September 29, 2010, the Rules of Professional Conduct were replaced in their entirety effective January 1, 2011. The disciplinary violations in this case occurred before and after January 1, 2011. Because there are no substantive differences between the two sets of Rules that apply to the violations at issue in this case, we refer to the text of the 2011 Rules for the sake of clarity.

[4] ABA Standard 4.11: Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury.

ABA Standard 4.41(b): Disbarment is generally appropriate when . . . a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client.

ABA Standard 4.41(c): Disbarment is generally appropriate when . . . a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client[.]

ABA Standard 4.61: Disbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes injury or potential injury to the client.

ABA Standard 5.11(b): Disbarment is generally appropriate when . . . a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

ABA Standard 7.1: Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.

Further, the Panel found that Mr. Skouteris had previously been disciplined twice for failing to disburse settlement proceeds and that no mitigating factors applied.

B.

In this appeal, Mr. Skouteris raises four issues: (1) the Board was allowed to twice amend its Petition for Discipline to present "a cumulative effect of relative [sic] insignificant charges"; (2) that the cumulative effect of allowing the amendments to the Petition for Discipline unfairly prejudiced Mr. Skouteris; (3) that the Trial Court failed to consider the proof submitted by Mr. Skouteris; and (4) that the Trial Court misinterpreted the proof relative to Mr. Skouteris's prior disciplinary offenses. We have thoroughly considered all of Mr. Skouteris's arguments and find that each lacks merit.

In issues (1) and (2), Mr. Skouteris argues that the consolidation of six complaints of misconduct, which were filed in three separate Petitions for Discipline, was unfairly prejudicial to him. According to Mr. Skouteris, these complaints, considered separately, would not have been significant enough to warrant the attention of the Board, and added together, they had the cumulative effect of being unduly prejudicial.

The Board's Petition for Discipline against Mr. Skouteris was filed by disciplinary counsel for the Board ("Disciplinary Counsel") on August 26, 2010. On February 17, 2011, Disciplinary Counsel filed a motion seeking permission to supplement its Petition for Discipline based on a complaint of misconduct in the Davis case, which the Board received on October 19, 2010. Mr. Skouteris did not object to the Board's motion, and the Panel granted it. The Board's supplemental Petition ("Second Petition") was filed on April 6, 2011. On January 13, 2012, Disciplinary Counsel filed a second motion to supplement its Petition based on the complaint of Mr. Levick, which the Board received on August 15, 2011. Mr. Skouteris consented to the entry of an order allowing the Board to supplement its Petition for Discipline a second time. The Board's supplemental Petition ("Third Petition") was filed on January 23, 2012.

The Tennessee Rules of Civil Procedure apply in attorney discipline cases. Tenn. Sup. Ct. R. 9, § 23.3. Upon motion, a court may permit a party to file supplemental pleadings setting forth transactions, occurrences or events which have happened since the date of the initial pleading when reasonable notice is given to the opposing party. Tenn. R. Civ. P. 15.04. This Court has previously approved of the use of supplemental petitions in attorney discipline cases. *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 613-14 (Tenn. 2010). In *Sneed*, we held that although disciplinary counsel must comply with Tenn. R. Civ. P. 15.04 by seeking permission from the hearing panel prior to filing a supplemental petition for discipline, a petitioner would not be entitled to relief where he was not prejudiced by the purported error. *Id.* at 614.

The Board properly filed two pre-trial motions to supplement its Petition for Discipline in accordance with Tenn. R. Civ. P. 15.04. Mr. Skouteris did not object to the Board's motion to file its Second Petition during the pre-hearing phase of his case. Mr. Skouteris agreed to the entry of an order allowing the Board's motion to file its Third Petition. Mr. Skouteris waived any error by not objecting to these motions to supplement. *See* Tenn. R. Civ. P. 12.08. The consolidated complaints against Mr. Skouteris contained similar issues that occurred in the same time frame and involved the same bank statements. Mr. Skouteris had sufficient notice of the allegations to prepare his defense. The alleged misconduct in the three petitions was not insignificant and merited the attention of the Board. Mr. Skouteris's argument that he was unfairly prejudiced by the Panel's decisions to grant the Board's motions to amend its Petition for Discipline lacks merit.

Next, Mr. Skouteris argues that the Trial Court failed to consider the evidence that he submitted to the Panel. In asserting this claim, Mr. Skouteris essentially asks us to re-weigh the evidence and substitute our judgment for that of the Panel and the Trial Court. This we cannot do. Our standard of review only allows us to reverse or modify a panel's decision if its findings are unsupported by evidence which is both substantial and material in light of the entire record. Tenn. Sup. Ct. R. 9, § 1.3. Based on this standard, our review confirms that the Panel's findings are supported by both substantial and material evidence. Additionally, we have carefully reviewed the record and find no evidence that was overlooked by the Panel or the Trial Court.

The Board presented uncontroverted evidence that, after accepting and depositing their settlement checks, Mr. Skouteris failed to maintain sufficient funds in his trust account to cover his obligations to Ms. Pruett, Ms. Cox, Mr. Crawford, Ms. Baker, Mr. Davis, and Mr. Levick. Mr. Skouteris did not provide competent representation to his clients and failed to act with reasonable diligence and promptness in disbursing their settlement proceeds. He failed to keep his clients informed about their cases and to respond to their requests for information. Mr. Skouteris failed to have written attorney fee agreements signed by Ms. Pruett, Mr. Levick, Mr. Crawford, and Mr. Davis. Mr. Skouteris failed to provide a written statement showing the disbursement of his clients' funds. He did not keep Ms. Cox's funds separate from his operating funds. In Ms. Pruett's case, he failed to cooperate with her new lawyer by providing information, documents and work product. Mr. Skouteris failed to respond to the Board after complaints were filed in Mr. Crawford's, Ms. Baker's, and Mr. Davis's cases. Mr. Skouteris violated multiple Rules of Professional Conduct, engaged in conduct involving dishonesty, deceit and misrepresentation, and engaged in conduct that was prejudicial to the administration of justice.

Mr. Skouteris argues that the Panel and Trial Court overlooked four factual matters. First, he notes that Mr. Crawford, Ms. Baker, Mr. Davis, and Mr. Levick ultimately "received every cent" of their settlements. The record, however, indicates that

the Panel and Trial Court considered this fact, but concluded that Mr. Skouteris had caused actual injury to Ms. Pruett and Ms. Cox because they were deprived of their settlement funds, and that Ms. Baker, Mr. Crawford, Mr. Levick, and Mr. Davis were subjected to potentially serious injury by Mr. Skouteris's mishandling of their funds. These findings, as well as the Panel's subsequent Order noting that restitution was still owed to Ms. Pruett and Ms. Cox, make clear that the Panel considered the fact that Mr. Crawford, Ms. Baker, Mr. Davis, and Mr. Levick ultimately received their full settlements.

Second, Mr. Skouteris argues that the Panel and Trial Court failed to note that Ms. Cox, Mr. Crawford, and Ms. Baker did not testify before the Panel. However, it was not necessary for them to testify. There was sufficient evidence introduced to prove that Mr. Skouteris had mishandled the settlement proceeds of Ms. Cox, Mr. Crawford, and Ms. Baker without the benefit of their testimony.

Third, Mr. Skouteris argues that the Panel and Trial Court only looked to the balance of Mr. Skouteris's trust account, rather than considering Mr. Skouteris's testimony that Mr. Crawford was responsible for delaying Mr. Skouteris's ability to disburse his settlement proceeds. Mr. Skouteris failed to maintain Mr. Crawford's settlement proceeds in his trust account. It makes no difference that Mr. Crawford may have delayed the distribution of his settlement proceeds.

Fourth, Mr. Skouteris argues that the Panel and Trial Court failed to recognize that he owed no legal duty to Jill Alston, the complainant in Ms. Baker's case. This is irrelevant. The complainant's identity would have no bearing on the findings of the Panel and the Trial Court that Mr. Skouteris failed to maintain Ms. Baker's settlement funds in his trust account.

In his next issue, Mr. Skouteris argues that the Trial Court mistakenly concluded that he had previously been suspended for professional misconduct on two occasions—rather than admonished twice and publicly reprimanded once. Mr. Skouteris is correct that this statement of the Trial Court was inaccurate, but this error was of no consequence due to the extent and severity of Mr. Skouteris's misconduct and the appropriate punishment for each violation.

Although not listed as an issue in his brief, Mr. Skouteris argues that disbarment was an inappropriate sanction for his misconduct, and suggests that a more appropriate sanction is the imposition of a five-year suspension with the last three years served on a probationary status. Mr. Skouteris's continued insistence that his misconduct was limited to trivial accounting errors is troubling. In finding that Mr. Skouteris's misconduct amounted to conversion for personal gain, the Panel correctly noted: "It is obvious that Mr. Skouteris converted funds in his trust account for personal use in that he utilized any funds available to keep his practice afloat and to make payments to others and to make

withdrawals for himself." Even if Mr. Skouteris intended to pay his clients all that they were owed in due time, converting their property for his own use for any period of time was a serious ethical violation and a breach of his fiduciary duty. By continuing to describe his trust account violations as insignificant, Mr. Skouteris shows a lack of understanding that his conduct is wrong. Mr. Skouteris also argues that his punishment should be reduced in light of his twenty-four-year law career. Under the ABA Standards, however, substantial experience in the practice of law is an aggravating factor, not a mitigating factor. ABA Standard 9.22(i).

## CONCLUSION

For the foregoing reasons, the judgment of the Trial Court is affirmed, and Mr. Skouteris is disbarred from the practice of law. Costs of this appeal are assessed to George E. Skouteris, Jr. and his surety, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE