IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
January 10, 2017 Session

## DANNY C. GARLAND, II v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

**Direct Appeal from the Chancery Court for Knox County
No. 189106-3   Jon Kerry Blackwood, Senior Judge**

---

**No. E2016-01106-SC-R3-BP – Filed August 10, 2017**

---

A hearing panel of the Board of Professional Responsibility determined that a Knoxville attorney should receive a public censure based on his violations of Rules of Professional Conduct 1.3, 1.4, and 8.4(a). The trial court affirmed the hearing panel's decision. After careful consideration, we affirm the judgment of the trial court.

**Appeal Pursuant to Tenn. Sup. Ct. R. 9, § 1.3; Judgment of the
Chancery Court Affirmed**

SHARON G. LEE, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK and ROGER A. PAGE, JJ., joined. HOLLY KIRBY, J., filed a dissenting opinion.

Danny C. Garland, II, Knoxville, Tennessee, pro se.

Krisann Hodges, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

### OPINION

### I. Background

This disciplinary action involves Knoxville attorney Danny C. Garland, II.[1] When this action began, Mr. Garland had been practicing law for seventeen years. He had one full-time employee, Jamie Harris, whose responsibilities included communicating with clients and preparing documents. He also had one part-time employee, Carol Snyder, who

---

[1] This factual summary is based on evidence presented to the hearing panel on December 11, 2014.

occasionally worked full time and whose responsibilities included answering the telephone and filing. Mr. Garland's practice primarily involved family law and consisted of about 100 active files. He relied on Ms. Harris to talk to clients and answer questions because he was often in court, depositions, or meetings. According to Mr. Garland, he reviewed his active files every thirty to forty-five days to ensure that no action was needed.

In September 2010, Samantha McKeogh hired Mr. Garland to handle a stepparent adoption for her husband, Jason McKeogh. Mr. Garland had previously represented Ms. McKeogh in divorce proceedings. Both Ms. McKeogh and Mr. Garland believed that it would be difficult to get the child's father, Scott Atchley, to consent to an agreed order due to his history of erratic and uncooperative behavior. After Mr. Garland filed a petition for adoption on January 20, 2011, initial efforts to get Mr. Atchley's signature were unsuccessful. However, on July 7, 2011, Mr. Atchley came to Mr. Garland's office and signed an agreed order consenting to the adoption. Mr. Garland was not present, and his staff did not advise him that Mr. Atchley had signed the agreed order. Ms. Harris sent an email to Ms. McKeogh informing her that Mr. Atchley had signed the order. Ms. Snyder then mistakenly placed the agreed order in Ms. McKeogh's closed divorce file rather than in her open adoption file.

On August 8, 2011, Ms. McKeogh sent an email to Ms. Harris asking about a hearing date, requesting a copy of the agreed order that Mr. Atchley had signed, and advising that she had a new address in Clarksville, Tennessee. Over five months later, on January 17, 2012, Ms. McKeogh emailed Ms. Harris inquiring about the status of the adoption and noting that she expected her husband, a staff sergeant in the United States Army, to be deployed to Afghanistan in a month or two. The email stated: "I know that you all are busy but it's been 6 months since [Mr. Atchley] signed his rights away."

On March 23, 2012, the Knox County Chancery Court entered an order requiring Mr. Garland to prosecute the adoption matter. Mr. Garland, still unaware that Mr. Atchley had signed the agreed order over eight months earlier, called Ms. McKeogh to discuss whether she still wanted to pursue the matter. After Ms. McKeogh told Mr. Garland that Mr. Atchley had already signed the order, Mr. Garland reviewed his files and found the agreed order in Ms. McKeogh's closed divorce file. Mr. Garland attended a Chancery Court pre-trial conference on April 24, 2012. After the pre-trial conference, Mr. Garland decided he needed to prepare and file an amended petition containing Mr. Atchley's notarized signature. As a result, the adoption hearing previously set for May 1, 2012, was postponed.

Ms. McKeogh was notified of the postponement, and efforts began anew to obtain Mr. Atchley's signature on the amended petition. On September 12, 2012, Mr. Garland's office received the amended petition for adoption signed by Mr. Atchley. The same day,

Ms. Harris emailed Ms. McKeogh to inform her that the amended petition had been signed. Later that day, Ms. McKeogh replied to Ms. Harris, "So where do we go from here?" Ms. McKeogh also advised Ms. Harris that Mr. McKeogh might be deployed at the beginning of the year. Ms. Snyder mailed a copy of the amended petition to Ms. McKeogh so she and her husband could sign it. However, she mistakenly mailed the amended petition to Ms. McKeogh's former address in South Carolina and not to her current address in Clarksville, Tennessee. On September 20, 2012, Ms. Harris sent an email informing Ms. McKeogh that a meeting between Mr. Garland and the Chancellor would not occur "until MAYBE next week."

Ms. McKeogh sent several emails to Ms. Harris in September, October, and November 2012. She also left numerous messages and voicemails, most of which were not returned. At one point when Ms. McKeogh called and asked to speak with Mr. Garland, she was told that Mr. Garland said she needed to speak with Ms. Harris. Ms. McKeogh then "kind of gave up trying to [reach Mr. Garland] and . . . just tried to focus all [her] efforts on trying to reach [Ms. Harris]." Mr. Garland agreed that Ms. McKeogh "stopped . . . trying to talk to me" and that "[h]ad she called . . . , [he] could have straightened it out." He recalled that he returned a call from Mr. McKeogh on one occasion but stated that Ms. McKeogh did not contact him directly and did not set up an appointment to meet with him.

Finally, on January 14, 2013, Ms. McKeogh sent another email to Ms. Harris that stated:

> I've been trying to contact you for several months and have had no response. I don't know if there is just no news [and] that is why no one is returning my calls or [if] you aren't getting my messages. Whatever the reason is, I would really appreciate it if you or [Mr. Garland] could please call me or my husband and let us [know] what is going on. We are getting frustrated at the amount of time this case is taking. It has been two and a half years since we began this process, and since then, [Mr. Atchley] has signed his rights away twice. I understand that we aren't your only clients, and that the law doesn't happen overnight, it's a process.

In a reply email dated January 18, 2013, Ms. Harris stated: "I want to start by apologizing for the lack of communication. That will be fixed." Unaware that the amended petition had been mailed to the wrong address, Ms. Harris further stated: "I believe the last activity was sending you the [amended] papers for you and your husband to sign." On January 21, 2013, Ms. McKeogh responded to Ms. Harris she had not received a copy of the amended petition. At that point, it was discovered that in September 2012, the amended petition had been sent to Ms. McKeogh's previous

address, not to her current address in Clarksville.[2] After receiving the amended petition, Ms. McKeogh and her husband signed it in late January 2013 and immediately returned it to Mr. Garland's office. In February, March, and April 2013, Ms. McKeogh emailed Ms. Harris inquiring about the status of the case and the date of the final hearing. The amended petition for adoption was filed on March 23, 2013. On July 19, 2013, the adoption was granted.

*Ms. McKeogh's Complaint*

On June 7, 2013, Ms. McKeogh filed a complaint with the Board of Professional Responsibility. Ms. McKeogh alleged in the complaint that she hired Mr. Garland to handle an adoption case and that there had been an initial delay due to the difficulty in obtaining a response from Mr. Atchley. The complaint further stated:

> In September 2012, [Mr. Atchley] signed away his rights for a second time. Since then, we have had little or no communication from Mr. Garland's office. We have called and emailed repeatedly, only to hear answering machines or excuses. I emailed [Ms. Harris] on January 14th, [2013], . . . telling her that we would contact the [Bar] Association if our calls continued to be ignored. She replied, telling us she was sorry for the communication issues and promising to fix them. However, since then we have had little to no communication, only being able to reach the secretary who takes our number and never returns our calls/emails. We understand that lawyers are very busy and that things don't happen overnight. However, it has been 3 years and we are paying clients that just want our little girl to have the same last name as us.

On October 14, 2013, Mr. Garland responded to the complaint, asserting that he had drafted both a petition and an amended petition for adoption, that Mr. Atchley had been uncooperative, and that the adoption was granted after Mr. Atchley signed the amended petition. Mr. Garland said that his office was in frequent communication with Ms. McKeogh regarding efforts to obtain Mr. Atchley's signature for the adoption.

---

[2] In December 2012, the postal service apparently returned the amended petition to Mr. Garland's office. Mr. Garland explained that he and his staff missed several days of work in December 2012 and January 2013 due to the holidays and inclement weather.

*Hearing Panel*

On June 27, 2014, the Board of Professional Responsibility filed a Petition for Discipline against Mr. Garland, alleging violations of Rules of Professional Conduct 1.3,[3] 1.4,[4] and 8.4(a)[5] regarding his representation of Samantha and Jason McKeogh.[6] On December 11, 2014, a hearing panel heard the testimony of Mr. Garland, Ms. Harris, and Ms. Snyder and later reviewed the deposition testimony of Mr. and Ms. McKeogh. On December 22, 2014, the hearing panel issued its findings:

> [1.] By failing to timely proceed with the petition for adoption after execution of the agreed order by Mr. Atchley on July 7, 2011, which led to a significant delay in the resolution of the adoption, Mr. Garland failed to act with reasonable diligence in the representation of his clients.

---

[3] "A lawyer shall act with reasonable diligence and promptness in representing a client." Tenn. Sup. Ct. R. 8, RPC 1.3.

[4] Rule 1.4 provides:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in RPC 1.0(e), is required by these Rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Tenn. Sup. Ct. R. 8, RPC 1.4.

[5] Under Rule 8.4(a), it is professional misconduct for a lawyer to "violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another . . . ." Tenn. Sup. Ct. R. 8, RPC 8.4(a).

[6] The petition included allegations with respect to Mr. Garland's representation of another client in an unrelated case, but that claim was later dismissed by the hearing panel.

[2.] By failing to timely proceed with the petition for adoption after execution of the amended petition for adoption by Mr. Atchley on September 20, 2012, which led to a significant delay in the resolution of the adoption, Mr. Garland failed to act with reasonable diligence in the representation of his clients.

[3.] Mr. Garland is responsible for a failure to reasonably communicate with Ms. McKeogh regarding the status of the adoption.

After determining that Mr. Garland violated Rules of Professional Conduct 1.3, 1.4, and 8.4(a), the hearing panel considered the following American Bar Association Standard ("ABA Standard") with respect to the appropriate sanction:

4.43 LACK OF DILIGENCE

Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.

ABA Standards for Imposing Lawyer Sanctions § 4.43 (1992). As aggravating factors, the hearing panel considered Mr. Garland's prior disciplinary record,[7] pattern of misconduct, multiple offenses, and substantial experience in the practice of law. *See id.* § 9.22(a), (c), (d), (i). As mitigating factors, the hearing panel found that Mr. Garland did not act with a dishonest or selfish motive and that he was cooperative in these proceedings. *See id.* § 9.32(b), (e). The hearing panel concluded that Mr. Garland should be publicly censured. *See* Tenn. Sup. Ct. R. 9, § 4.5.

*Trial Court*

Mr. Garland filed a Petition for Writ of Certiorari in the Knox County Chancery Court. On September 1, 2015, the trial court affirmed the hearing panel's decision. The trial court found that Mr. Garland's "office policy and . . . supervision enabled the lack of communication and delay in this case" and that the hearing panel's findings were supported by the record and were neither arbitrary nor capricious. The trial court also determined that a "reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client and causes injury or potential injury to a client." Mr. Garland appealed to this Court.

---

[7] Mr. Garland received a private informal admonition on June 13, 2007, for a violation of RPC 1.3 (diligence), and he received a private reprimand on January 30, 2013, for a violation of RPC 1.3 (diligence) and 1.4 (communication).

## II. Analysis

The Supreme Court of Tennessee is the source of authority for the Board of Professional Responsibility and all of its functions. *Brown v. Bd. of Prof'l Responsibility*, 29 S.W.3d 445, 449 (Tenn. 2000). As part of our duty to regulate the practice of law in Tennessee, we bear the ultimate responsibility for enforcing the rules governing our profession. *See Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 470 (Tenn. 2003). "We review judgments under our 'inherent power and essential and fundamental right to administer the rules pertaining to the licensing of attorneys.'" *Skouteris v. Bd. of Prof'l Responsibility*, 430 S.W.3d 359, 362 (Tenn. 2014) (quoting *Hughes v. Bd. of Prof'l Responsibility*, 259 S.W.3d 631, 640 (Tenn. 2008).

Effective January 1, 2014, this Court adopted substantial changes to Tennessee Supreme Court Rule 9, which governs disciplinary proceedings. *See* Tenn. Sup. Ct. R. 9. Cases initiated before the effective date are governed by the pre-2014 version of Rule 9. *See Cody v. Bd. of Prof'l Responsibility*, 471 S.W.3d 420, 424 n.9 (Tenn. 2015). Because this case was initiated in June 2013, when Ms. McKeogh filed a complaint against Mr. Garland, we apply the pre-2014 version of Rule 9.

When reviewing a hearing panel's judgment, a trial court must consider the transcript of the evidence before the hearing panel and the hearing panel's findings and judgment. Tenn. Sup. Ct. R. 9, § 33.1(b). Regarding questions of fact, the trial court should not substitute its own judgment for the conclusions of the hearing panel regarding the weight of the evidence. *Skouteris*, 430 S.W.3d at 362 (citing *Bd. of Prof'l Responsibility v. Allison*, 284 S.W.3d 316, 323 (Tenn. 2009)). Further, "[a]ny modification to a hearing panel's decision must be based on one of the [factors enumerated] in Tennessee Supreme Court Rule 9, section 1.3." *Id.* (citing *Bd. of Prof'l Responsibility v. Love*, 256 S.W.3d 644, 652 (Tenn. 2008)). We apply the same standard of review as that applied by a trial court. *Mabry v. Bd. of Prof'l Responsibility*, 458 S.W.3d 900, 903 (Tenn. 2014) (citing *Skouteris*, 430 S.W.3d at 362). Furthermore, we will not disturb the hearing panel's decision unless

> the rights of the party filing the Petition for Review have been prejudiced because the hearing panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the hearing panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Sup. Ct. R. 9, § 33.1(b).

7

Here, the issues we review are (1) whether the trial court erred in affirming the hearing panel's decision that Mr. Garland violated Rule of Professional Conduct 1.4; (2) whether the trial court erred in affirming the hearing panel's decision that Mr. Garland violated Rule of Professional Conduct 1.3; (3) whether the trial court erred in upholding the hearing panel's decision that Mr. Garland's conduct and the resulting delay amounted to misconduct under Rule of Professional Conduct 8.4(a); and (4) whether Mr. Garland's public censure was an appropriate sanction.

*Rule of Professional Conduct 1.4 (Communication)*

Mr. Garland argues that the trial court erred in affirming the hearing panel's decision that he violated Rule of Professional Conduct 1.4 because the panel "erroneously applied a strict liability standard." Mr. Garland asserts that he and his staff acted reasonably in communicating with Ms. McKeogh, that his office had policies and procedures in place that identified the mistakes that were made, and that Ms. McKeogh did not try to contact him directly. The Board responds that Rule of Professional Conduct 1.4 does not contain a required mental state and that mental state is considered in determining the sanction for a violation. The Board asserts that Mr. Garland had an obligation to communicate with Ms. McKeogh, that Mr. Garland "fail[ed] to insert himself" in the communication process, and that Mr. Garland "created an environment in which . . . a mistake would go undetected indefinitely."

Rule of Professional Conduct 1.4(a) states that a lawyer shall

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in RPC 1.0(e), is required by these Rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

Tenn. Sup. Ct. R. 8, RPC 1.4(a). Rule 1.4(b) states that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Tenn. Sup. Ct. R. 8, RPC 1.4(b). The comments to the rule

underscore the importance of maintaining consistent and reasonable client communication:

> [1] Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation. . . .

> [4] A lawyer's regular communication with clients will minimize the occasions on which a client will need to request information concerning the representation. *When a client makes a reasonable request for information, however, paragraph (a)(4) requires prompt compliance with the request, or if a prompt response is not feasible, that the lawyer, or a member of the lawyer's staff, acknowledge receipt of the request and advise the client when a response may be expected. Client communications, including telephone calls, should be promptly returned or acknowledged.*

Tenn. Sup. Ct. R. 8, RPC 1.4 cmts. 1 & 4 (2013) (emphasis added).

We conclude that Mr. Garland failed to keep Ms. McKeogh reasonably informed about the status of the adoption case and failed to promptly comply with her reasonable requests for information. While Mr. Garland was handling Ms. McKeogh's case, from September 2010 to July 2013, he had minimal contact with her. Although Mr. Garland filed the adoption petition in January 2011, he did not communicate with Ms. McKeogh again until March 2012 when he received an order from the court to prosecute the case. Even after the misfiling error was discovered and corrected, the lack of communication continued. Despite being prompted by the court order, Mr. Garland failed to take a more active role in advising Ms. McKeogh about the status of her case and responding to her requests for information, despite her growing sense of urgency and understandable frustration. After the McKeoghs signed the amended petition in January 2013, Ms. McKeogh called and emailed Mr. Garland's office during February, March, and April 2013 for information but received little to no response until after she filed her complaint with the Board in June 2013.

Throughout Mr. Garland's handling of the stepparent adoption, communication was primarily a one-way street. Ms. McKeogh repeatedly and unsuccessfully contacted Mr. Garland's office by telephone and email to obtain information on the status of the case. Ms. McKeogh testified she tried to contact Mr. Garland directly but, in the fall of 2012, was told by a member of his staff that Mr. Garland said she needed to speak with Ms. Harris. After this exchange, Ms. McKeogh gave up trying to reach Mr. Garland and focused on trying to contact Ms. Harris. Although Mr. Garland argues that Ms. McKeogh was at fault for failing to contact him directly, the evidence indicates she did attempt to communicate with him, and, in any event, the ethical obligations in Rules of Professional Conduct 1.4 lie with the attorney, not the client.

Admittedly, time constraints, workloads, dockets, and court appearances often make it difficult for an attorney to return every phone call or respond to every email immediately. However, Mr. Garland should have taken a more active role in keeping Ms. McKeogh advised of the case's progress and should have responded promptly and reasonably to her requests for information. Mr. Garland's failure to adequately communicate with Ms. McKeogh during the pendency of the case resulted in a considerable delay in finalizing the adoption. The hearing panel's determinations that Mr. Garland violated Rule of Professional Conduct 1.4 are supported by substantial and material evidence in this record.

*Rule of Professional Conduct 1.3 (Diligence)*

Mr. Garland argues that the hearing panel erred in determining that he violated Rule of Professional Conduct 1.3 based on Ms. Snyder's failure to mail the amended petition to Ms. McKeogh's correct address in September 2012. He also asserts that the delay from Ms. Snyder's error resulted from the failure of Ms. McKeogh to leave a forwarding address with the Postal Service and the failure of the occupant of Ms. McKeogh's former address to promptly return the mail to sender. The Board responds that the hearing panel's determination was based on Mr. Garland's neglect and not simply the mailing error made by his assistant.

Rule of Professional Conduct 1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Tenn. Sup. Ct. R. 8, RPC 1.3. "A lawyer's work load must be controlled so that each matter can be handled competently." *Id.* cmt. 2.

The hearing panel found that Mr. Garland did not act with reasonable diligence by "failing to timely proceed with the petition for adoption after execution of the agreed order by Mr. Atchley on July 7, 2011," and by "failing to timely proceed with the petition for adoption after execution of the amended petition for adoption by Mr. Atchley on September 20, 2012."

Contrary to Mr. Garland's assertion, the clerical error in mailing the amended petition to the wrong address in September 2012 was not the sole basis for the hearing panel's determination. There was a series of missteps and inaction by Mr. Garland that caused a delayed resolution in the adoption case.

After the initial agreed order was signed by Mr. Atchley in July 2011, Mr. Garland failed to review the order before it was misfiled in his office. After the agreed order was signed, Ms. McKeogh contacted Mr. Garland's office numerous times by email and telephone, requested a copy of the agreed order, gave notice of her change of address, asked about scheduling a hearing, and referenced her husband's possible deployment.

10

Despite Ms. McKeogh's obvious efforts to move forward with her case, Mr. Garland did not discover that the agreed order had been misfiled for another eight months.

Mr. Garland testified he reviewed his files every thirty to forty-five days. Either this file review did not occur as regularly as Mr. Garland indicated or his review was insufficient because Ms. McKeogh's file was inactive for long periods of time during the thirty-five months that Mr. Garland was handling the uncontested adoption case. A review of the file every thirty to forty-five days would have shown on many occasions that the case was dormant and required Mr. Garland's attention and action.

After an amended petition was prepared and Mr. Atchley's notarized signature was obtained in September 2012, an erroneous mailing to Ms. McKeogh's prior address created more delay, even though Ms. McKeogh had provided an updated address over one year earlier. Once again, despite Ms. McKeogh's calls, voicemails, and emails, and Mr. Garland's purported regular file review, Mr. Garland did not discover that the case was at a standstill. In addition, when Mr. and Ms. McKeogh signed the amended petition and returned it to Mr. Garland's office by the end of January 2013, Mr. Garland delayed filing it with the court clerk until March 23, 2013. Ms. McKeogh emailed Mr. Garland's office in February, March, and April inquiring about the hearing date and received little or no response. The final hearing on the adoption was not held until four months after the amended petition was filed and over a month after Ms. McKeogh filed her complaint with the Board. Mr. Garland failed to act with reasonable diligence and promptness in representing Ms. McKeogh.

We conclude that the hearing panel's determination that Mr. Garland violated Rule of Professional Conduct 1.3 is supported by substantial and material evidence.

*Rule of Professional Conduct 8.4(a) (Misconduct)*

Mr. Garland argues that no action or inaction on his part caused the delay in pursuing Ms. McKeogh's case or amounted to an ethical violation. He asserts that he had policies and practices in place to ensure reasonable client communication and that he should not be held "vicariously liable" for the errors of his staff or Ms. McKeogh's failure to communicate.[8] In particular, he cites Ms. Harris's failure to inform him about the agreed order in July 2011, Ms. Snyder's misfiling of the agreed order, Ms. Harris's failure to bring Ms. McKeogh's concerns to his attention, Ms. Snyder's mailing of the amended petition to the wrong address in September 2012, and Ms. McKeogh's failure to contact him directly. The Board responds that Mr. Garland's pattern of neglect and his

---

[8] In his reply brief, Mr. Garland argues that his internal policies and procedures complied with Rule of Professional Conduct 5.3(a) and (b). However, the hearing panel did not make any findings or base its decision on these provisions.

failure to maintain reasonable communications with Ms. McKeogh resulted in errors and delay and was a violation of Rule of Professional Conduct 8.4(a).

Rule of Professional Conduct 8.4(a) states that it is professional misconduct for a lawyer to "violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another." Tenn. Sup. Ct. R. 8, RPC 8.4(a).

Although Mr. Garland asserts that his firm had reasonable policies and practices in place for communicating with clients and monitoring case files, the procedures were ineffective. The evidence established that Mr. Garland failed to maintain adequate communication with Ms. McKeogh; failed to act diligently in monitoring and pursuing the adoption in a timely fashion; and failed to adequately review Ms. McKeogh's file on a regular basis to ascertain if the file needed attention. Although Mr. Garland blames his problems on his staff, he admitted at oral argument before this Court that he was responsible for the shortcomings of his staff.

We conclude that the hearing panel's determination that Mr. Garland violated Rule of Professional Conduct 8.4(a) was supported by substantial and material evidence.

*Appropriate Sanction*

While not specifically argued by Mr. Garland, we agree with the trial court that public censure was an appropriate sanction. *See* Tenn. Sup. Ct. Rule 9, § 4.5. We are guided by the ABA Standards for determining the appropriateness of such discipline. *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 617 (Tenn. 2010) (citing Tenn. Sup. Ct. R. 9, § 8.4). "The ABA Standards promote the 'consideration of all factors relevant to imposing the appropriate level of sanction in an individual case.'" *Mabry*, 458 S.W.3d at 910 (quoting *Lockett v. Bd. of Prof'l Responsibility*, 380 S.W.3d 19, 28 (Tenn. 2012)). The hearing panel considered the following provision:

> Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.

ABA Standards § 4.43. As aggravating factors, the hearing panel considered Mr. Garland's prior disciplinary record, pattern of misconduct in this case, multiple offenses, and substantial experience in the practice of law. *See id.* § 9.22(a), (c), (d). To these we would add that Mr. Garland's primary defense is to blame the problems on his office staff and his client. *See id.* § 9.22(g). As mitigating factors, the hearing panel found that Mr. Garland did not act with a dishonest or selfish motive and that he was cooperative in

these proceedings. *See id.* § 9.32(b), (e). We agree that a public censure is appropriate in this case. *See* Tenn. Sup. Ct. R. 9, § 4.4.

### III. Conclusion

After carefully reviewing the issues raised by Mr. Garland, the entire record, briefs filed by the parties, argument of counsel, and all applicable authority, we find that none of Mr. Garland's arguments have merit. Based on our standard of review, we hold that the result reached by the hearing panel was not arbitrary, capricious, or characterized by an abuse of discretion; and Mr. Garland's public censure was fully supported by evidence which is both substantial and material in light of the entire record. The judgment of the Knox County Chancery Court is affirmed. The costs of this appeal are taxed to Danny C. Garland, II, and his surety, for which execution may issue if necessary.


_____
SHARON G. LEE, JUSTICE