IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
June 1, 2017 Session

**SEAN K. HORNBECK v. BOARD OF PROFESSIONAL RESPONSIBILITY
OF THE SUPREME COURT OF TENNESSEE**

**Direct Appeal from the
Chancery Court for Davidson County
No. 15-509-III      Ben H. Cantrell, Special Judge**

———————————————————

**No. M2016-01793-SC-R3-BP**

———————————————————

In this attorney disciplinary appeal, upon petition by the Tennessee Board of Professional Responsibility, this Court ordered the temporary suspension of the attorney from the practice of law based on the threat of substantial harm he posed to the public. For a time, the attorney was placed on disability status; later he was reinstated to suspended status. Subsequently, after an evidentiary hearing, a hearing panel found multiple acts of professional misconduct, including knowing conversion of client funds with substantial injury to clients, submitting false testimony and falsified documents in court proceedings, engaging in the unauthorized practice of law, violating Supreme Court orders, and defrauding clients. The hearing panel determined that the attorney should be disbarred. On appeal to the chancery court, the attorney argued *inter alia* that the disbarment should be made retroactive to the date of his temporary suspension. The chancery court affirmed the decision of the hearing panel. On appeal to this Court, the attorney does not question the disbarment but argues that it would be arbitrary and capricious not to make his disbarment retroactive to the date of his temporary suspension, in order to advance the date on which he may apply for reinstatement of his law license. We disagree. In contrast to suspension, which contemplates that the lawyer will return to law practice, disbarment is not a temporary status. Disbarment is a termination of the individual's license to practice law in Tennessee. Therefore, we decline to make the effective date of the attorney's disbarment retroactive to the date of his temporary suspension. Accordingly, we affirm.

**Tenn. Sup. Ct. R. 9, § 1.3 (2006) (currently Tenn. Sup. Ct. R. 9, § 33.1(d) (2014))
Direct Appeal; Judgment of the Chancery Court Affirmed**

HOLLY KIRBY, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK and SHARON G. LEE, JJ., joined. ROGER A. PAGE, J., not participating.

William W. (Tripp) Hunt III, Nashville, Tennessee,[1] for the appellant, Sean K. Hornbeck.

William C. Moody, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises out of attorney disciplinary proceedings against Appellant/Respondent Sean Hornbeck. Mr. Hornbeck graduated from law school in 1996 and became licensed to practice law in New York and the District of Columbia in 1997. After serving as a federal law clerk, Mr. Hornbeck practiced law in the District of Columbia and then at a large firm in Delaware. Later, he obtained his Tennessee law license by way of reciprocity and opened his own law practice, Hornbeck Law, in Nashville.

In 2008, a Texas businessman introduced Mr. Hornbeck to Harish Raghavan, a businessman working in the finance industry in New York City. After the introduction, Mr. Hornbeck proposed a financial venture to Mr. Raghavan that entailed the advancement of very substantial funds to Mr. Hornbeck. Under Mr. Hornbeck's proposed plan, Mr. Raghavan would advance Mr. Hornbeck funds to be held in an escrow account; these funds would then serve as essential equity behind a huge leverage transaction on a trading platform that would in turn produce large profits. Mr. Hornbeck assured Mr. Raghavan that the advanced funds would be "blocked," meaning they would not be used in investments or moved out of the escrow account without Mr. Raghavan's express permission.

Mr. Raghavan agreed to Mr. Hornbeck's proposal. He transferred between $5 million and $5.5 million into a Wachovia Bank escrow account that was maintained by

---

[1] The record contains both a Nashville, Tennessee, address and a Forney, Texas, address for Mr. Hunt.

Mr. Hornbeck in his capacity as an attorney. Although Mr. Raghavan gave Mr. Hornbeck permission to move the escrow account to a different, suitably rated financial institution,[2] Mr. Raghavan never gave Mr. Hornbeck permission to transfer any of the money out of the escrow account.

Mr. Hornbeck promised Mr. Raghavan payouts from the transactions within thirty days, to be paid to Mr. Raghavan in June or July 2008. The payouts to Mr. Raghavan did not occur as promised.

After the promised payouts failed to materialize, Mr. Raghavan began to pursue Mr. Hornbeck for a return of the monies he had advanced. On August 12, 2008, Mr. Hornbeck arranged for a return of $1 million to Mr. Raghavan's bank account. However, Mr. Hornbeck did not return the remaining balance of between $4 million and $4.5 million. Mr. Hornbeck never gave Mr. Raghavan an accounting of what happened to his money.

In the fall of 2008, Mr. Raghavan intervened in a lawsuit filed in the chancery court for Davidson County and named Mr. Hornbeck as a defendant. Mr. Raghavan sought an accounting of the funds held in trust by Mr. Hornbeck. In October 2008, the chancery court ordered Mr. Hornbeck to provide a detailed accounting of the approximately $5.5 million Mr. Raghavan had deposited in his trust account. It also ordered him to file unredacted copies of his bank statements at Wachovia Bank and Credit Suisse.

In November 2008, Mr. Hornbeck filed with the chancery court a purported bank statement showing a balance in excess of $5.5 million in his trust account at Credit Suisse, as well as a purported email from Credit Suisse confirming a balance of over $5.5 million in the account. However, these documents were falsified to indicate that Mr. Hornbeck's trust account had $5.5 million when it did not. Jeff Weaver, an administrative employee of Mr. Hornbeck's law firm, later testified that he prepared the false financial documents and the accompanying email Mr. Hornbeck submitted to the chancery court.

---

[2] Mr. Raghavan gave Mr. Hornbeck general permission to move the escrow account to another suitable financial institution, but did not identify a specific institution. Mr. Hornbeck then moved the escrow account to Credit Suisse.

Accurate and unredacted records of Mr. Hornbeck's trust account revealed that, in June and July of 2008, Mr. Hornbeck transferred large sums of money from the trust account to third party individuals and entities, as well as to his law firm's operating account. During this time, Mr. Hornbeck also made multiple over-the-counter withdrawals from the trust account. All of these transfers and withdrawals occurred without the knowledge of Mr. Raghavan.

On November 26, 2008, the chancery court ordered Mr. Hornbeck to transfer all of the funds remaining in the Credit Suisse trust account to the clerk and master of the court. Mr. Hornbeck did not comply with this order. Instead, he instructed Credit Suisse to transfer the remaining funds in his trust account, less than $200,000, to the Regions Bank account of his law firm employee, Jeff Weaver.

On December 15, 2008, this Court issued an order temporarily suspending Mr. Hornbeck from the practice of law. The order was based on a petition of the Tennessee Board of Professional Responsibility ("the "Board"), as well as the verified complaint in intervention and certified orders from the chancery court of Davidson County. Mr. Hornbeck then asked this Court to instead place him on disability inactive status; the request was supported by an affidavit from Mr. Hornbeck's physician. This request was granted in January 2009; the Court ordered that Mr. Hornbeck's license to practice law be transferred to disability inactive status until further order of the Court.[3] On October 21, 2011, upon an agreement that Mr. Hornbeck was no longer disabled, the Court ordered Mr. Hornbeck's disability inactive status dissolved. His law license resumed its status as temporarily suspended pending the resolution of disciplinary proceedings.

On November 13, 2013, the Board filed a petition for discipline against Mr. Hornbeck. Proceedings before a hearing panel were held on December 3, 2014. The Board presented to the hearing panel the evidence, arising out of the financial dealings with Mr. Raghavan described above, that led to the temporary suspension of Mr. Hornbeck's law license in 2008. Asked in his testimony to the hearing panel about how the transaction with Mr. Raghavan was supposed to generate a profit or how he would be

---

[3] In both the order of temporary suspension and the order placing Mr. Hornbeck on disability inactive status, this Court ordered him to "comply with Supreme Court Rule 9 in all respects, and particularly as provided in Section 18." Section 18 requires an attorney on suspended or disability inactive status to refrain from maintaining a presence or occupying an office where the practice of law is conducted, and requires him or her to remove "any indicia of lawyer, counselor at law, legal assistant, law clerk, or similar title." Tenn. Sup. Ct. R. 9, § 18.7 (2006).

compensated, Mr. Hornbeck claimed he had a poor memory of this time period. He attributed his poor memory to a head injury he allegedly sustained in the summer of 2008, when he was "jumped" and hit in the head with a metal pipe. The claimed head injury, Mr. Hornbeck said, affected his mental state and caused him to have to take various medications. The injury roughly coincided with the time period in which Mr. Hornbeck engaged Mr. Raghavan in the ill-fated financial venture.

In his testimony to the hearing panel, Mr. Hornbeck claimed that, when he submitted the falsified financial documents to the chancery court in the prior proceedings, he believed them to be true. At the time of his testimony to the chancery court, Mr. Hornbeck said, he was experiencing multiple family crises and still suffering from the effects of the 2008 head injury, for which he was taking numerous medications. However, Mr. Hornbeck also said that, despite the medications, he believed that he was truthfully answering the questions asked of him.

In the proceedings before the hearing panel, the Board presented evidence to support multiple other complaints against Mr. Hornbeck as well. The evidence on these other complaints is outlined below.

Complainants Joseph and Linda Dougherty retained Mr. Hornbeck in May 2007 to represent them in a dispute over earnest money paid to Turnberry Homes on a contract to purchase a house. Mr. Dougherty met Mr. Hornbeck for the first time over the phone and they discussed the contract dispute. In the conversation, Mr. Hornbeck insisted that Mr. Dougherty pay him a $5,000 retainer over the phone in order to proceed with the lawsuit. Mr. Hornbeck did not discuss with Mr. Dougherty the basis on which he would be billed. Mr. Dougherty paid the retainer and Mr. Hornbeck filed the lawsuit for the Doughertys in May. Mr. Hornbeck communicated with the lawyer for Turnberry Homes a couple of times and met with Mr. Dougherty at his office in July 2007. After the July 2007 meeting, the Doughertys received no further communications from Mr. Hornbeck, despite their repeated attempts to reach him by telephone, e-mail, and in person. Mr. Dougherty finally contacted another attorney to pursue the return of his $20,000 earnest money from Turnberry Homes.

In the disciplinary proceedings on Mr. Hornbeck, the attorney for Turnberry Homes, Todd Panther, testified that, on June 27, 2007, he sent Mr. Hornbeck a letter regarding the Doughertys' case, outlining proposed terms of settlement. In spite of numerous attempts to follow up with Mr. Hornbeck, Mr. Panther got no response. On August 21, 2007, Mr. Panther sent another letter to Mr. Hornbeck. The second letter referenced Mr. Hornbeck's failure to respond to Mr. Panther's first letter. It informed

Mr. Hornbeck that Turnberry Homes was actively marketing the disputed property in order to mitigate its damages. The second letter also mentioned their agreement that Turnberry Homes had an indefinite extension to answer the complaint Mr. Hornbeck had filed, given the ongoing settlement discussions. Mr. Hornbeck did not communicate any of these matters to the Doughertys. In the disciplinary proceedings, the Doughertys testified that they would not have agreed to the indefinite extension mentioned in Mr. Panther's second letter. The second letter from Mr. Panther also went unanswered. In 2009, with assistance from the Consumer Affairs Division of the Tennessee Department of Commerce and Insurance, the Doughertys settled their case with Turnberry Homes.

Because Mr. Hornbeck did not perform the services for which they retained him, the Doughtertys pursued Mr. Hornbeck for a return of their $5,000 retainer. Mr. Hornbeck sent the Doughertys a proposed settlement agreement, but he did not advise them to get advice from another attorney before entering into a settlement agreement with him. The draft settlement agreement was never executed and the Doughertys never got a refund from Mr. Hornbeck.

Complainant Elizabeth Garland, a registered nurse assistant, retained Mr. Hornbeck to represent her in a contract matter with a third party related to a house fire she experienced. She hired Mr. Hornbeck on May 21, 2008, and paid him a $1,500 retainer. Mr. Hornbeck wrote one letter to the adverse party on her behalf, and then apparently did no further work on Ms. Garland's matter. After May 2008, Mr. Hornbeck stopped communicating with Ms. Garland. She and her husband called Mr. Hornbeck multiple times and left messages; he never returned their phone calls or sent them any e-mails. Ms. Garland never received a refund of the retainer she paid Mr. Hornbeck and only received her file after she filed a complaint against Mr. Hornbeck in March 2009.

In 2010, after Mr. Hornbeck's license to practice law had been temporarily suspended and he was placed on disability inactive status, Mr. Hornbeck worked as an assistant for attorney Mary Clement at her law office in Sumner County. He typed pleadings, greeted clients, answered the phone, met with prospective clients, and performed basic legal research and marketing for Ms. Clement. On one occasion he sat at counsel table in court with Ms. Clement and handed her exhibits as she asked for them. Ms. Clement billed clients for Mr. Hornbeck's time.

During the time in which Mr. Hornbeck was working at Ms. Clement's office, Ms. Clement represented Mr. Glover Palmer Smith on a criminal matter. While Mr. Smith's case was ongoing, Mr. Hornbeck called him and suggested they meet to discuss Mr. Smith's case and some financial matters. They met at a Mexican restaurant. After

discussing the appeal of his criminal case, Mr. Hornbeck told Mr. Smith that Ms. Clement needed two $5,000 checks from him. Mr. Hornbeck assured Mr. Smith that he would receive an itemized statement later. Mr. Smith wrote two $5,000 checks as requested and made them payable to Ms. Clement. He gave both checks to Mr. Hornbeck. One check was endorsed by someone other than Ms. Clement and deposited into Mr. Hornbeck's bank account. In the disciplinary proceedings, Ms. Clement testified that Mr. Hornbeck had no reason to meet with Mr. Smith and that she had not asked Mr. Hornbeck to collect any money from Mr. Smith. Ms. Clement testified that Mr. Hornbeck was not authorized to deposit checks for her.

After the hearing, the hearing panel issued its judgment on March 25, 2015. The hearing panel found that Mr. Hornbeck violated Tennessee Supreme Court Rule 8, Rules of Professional Conduct (2006) ("RPC"), including RPC 1.3 (Diligence)[4]; RPC 1.4 (Communication)[5]; RPC 1.8(h) (Conflict of Interest)[6]; RPC 1.15(a) (Safekeeping Property and Funds)[7]; RPC 1.16(d) (Declining or Terminating Representation)[8]; RPC 3.2

---

[4] Tennessee Supreme Court Rule 8, RPC 1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[5] Tennessee Supreme Court Rule 8, RPC 1.4 states:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and comply with reasonable requests for information within a reasonable time.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[6] Tennessee Supreme Court Rule 8, RPC 1.8(h) states:

A lawyer shall not:

(1) Enter into an agreement with a prospective, current, or former client to prospectively limit the lawyer's liability to the client for malpractice; or

(2) Settle a claim for such liability, unless:

(i) The client is represented in the matter by independent counsel; or

(ii) The lawyer fully discloses all the terms of the agreement to the client in a manner that can reasonably be understood by the client, advises the client to seek the advice of independent counsel, and affords the client a reasonable opportunity to do so.

(Expediting Litigation)[9]; RPC 5.5 (Unauthorized Practice of Law)[10]; and RPC 8.4(a), (b), (c), (d) and (g) (Misconduct)[11]. The hearing panel concluded that the Board had proven

---

[7] Tennessee Supreme Court Rule 8, RPC 1.15(a) states:

A lawyer shall hold property and funds of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property and funds. A lawyer in possession of clients' or third persons' property and funds incidental to representation shall hold said property and funds separate from the lawyer's own property and funds.

[8] Tennessee Supreme Court Rule 8, RPC 1.16(d) provides that, upon termination of the representation of a client, a lawyer shall protect the client's interests, including promptly surrendering papers and property to which the client is entitled and promptly refunding any advance payment of fees that have not been earned or expenses that have not been incurred by the lawyer.

[9] Tennessee Supreme Court Rule 8, RPC 3.2 states: "A lawyer shall make reasonable efforts to expedite litigation."

[10] Tennessee Supreme Court Rule 8, RPC 5.5 states:

A lawyer shall not:

(a) Practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or

(b) Assist a person in the performance of activity that constitutes the unauthorized practice of law.

[11] Tennessee Supreme Court Rule 8, RPC 8.4 states:
It is professional misconduct for a lawyer to:

(a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;

(c) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(d) Engage in conduct that is prejudicial to the administration of justice;
. . . .

- 8 -

these violations by a preponderance of the evidence and that Mr. Hornbeck's acts of dishonesty seriously and adversely reflected on his fitness to practice law.

As required by Tennessee Supreme Court Rule 9, section 8.4 (2006),[12] the hearing panel then considered the American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards") applicable to this case:

4.11    FAILURE TO PRESERVE THE CLIENT'S PROPERTY
Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.

4.32 FAILURE TO AVOID CONFLICTS OF INTEREST
Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.

4.42    LACK OF DILIGENCE
Suspension is generally appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or
(b) a lawyer engages in a pattern of neglect [and] causes injury or potential injury to a client.

5.11    FAILURE TO MAINTAIN PERSONAL INTEGRITY
Disbarment is generally appropriate when:

---

(g) Knowingly fail to comply with a final court order entered in a proceeding in which the lawyer is a party, unless the lawyer is unable to comply with the order or is seeking in good faith to determine the validity, scope, meaning, or application of the law upon which the order is based.

[12] The hearing panel in Mr. Hornbeck's case applied the 2006 version of Tennessee Supreme Court Rule 9 because the matter was initiated before January 1, 2014, when comprehensive changes to Rule 9 became effective. *See Garland v. Bd. of Prof'l Responsibility*, No. E2016-01106-SC-R3-BP, 2017 WL 3440558, at *4 (Tenn. Aug. 10, 2017) (noting that the pre-2014 version of Rule 9 applies to cases that were initiated before the effective date of the new rule). The parties have not disputed that this is the applicable version of the Rule. Accordingly, citations in this opinion to Rule 9 are to the 2006 version of the Rule unless otherwise noted.

(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

6.21   ABUSE OF THE LEGAL PROCESS
Disbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.

7.1   VIOLATION   OF   OTHER   DUTIES   OWED   AS   A PROFESSIONAL
Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.

In addition, in accordance with ABA Standard 9.22, the hearing panel found the presence of aggravating circumstances, including  dishonest or selfish motive; a pattern of misconduct; multiple offenses; refusal to acknowledge wrongful nature of conduct; substantial experience in the practice of law; indifference to making restitution; and illegal conduct.  Under all of these circumstances, the hearing panel deemed disbarment to be the appropriate discipline for Mr. Hornbeck, in accordance with Rule 9, section 4.1.

Pursuant to Rule 9, section 1.3, Mr. Hornbeck filed an appeal in the chancery court for Davidson County.  In accordance with section 1.5 of Rule 9, this Court appointed Judge Ben Cantrell (hereinafter "trial court") to preside over the case.

On appeal, the trial court concluded that the facts as found by the hearing panel were supported by the evidence and that the facts support the hearing panel's decision to disbar Mr. Hornbeck, in accordance with the applicable ABA Standards.  Mr. Hornbeck argued that the hearing panel should have considered the fact that his mental state was

affected by the 2008 head injury that left him with memory problems and on medication. The trial court rejected this argument; it said that there was no evidence in the record that the alleged injury rendered Mr. Hornbeck unable to reason or distinguish between proper and improper conduct. The trial court also observed that, despite having allegedly suffered the head injury, Mr. Hornbeck retained the ability to shrewdly orchestrate the financial venture with Mr. Raghavan and obtain the $5,000 from Mr. Smith that Mr. Hornbeck converted to his own use.

Mr. Hornbeck also argued to the trial court that his disbarment should be made retroactive to the date he was first suspended from practicing law, December 15, 2008. The trial court found that Mr. Hornbeck had waived this issue by failing to raise it before the hearing panel.

Pursuant to Rule 9, section 1.3, Mr. Hornbeck now appeals directly to this Court. He argues that the decision of the hearing panel was vague since it did not provide the effective date of his disbarment, that he did not waive the issue of retroactive application of his disbarment, and that the hearing panel's failure to make the disbarment retroactive to the date of his temporary suspension is arbitrary and capricious. Our decision concerning the effective date of Mr. Hornbeck's disbarment impacts the date on which he is eligible to apply for reinstatement of his law license. *See* Tenn. Sup. Ct. R. 9, § 19.2 (stating that an attorney who has been disbarred "may not apply for reinstatement until the expiration of at least five years from the effective date of the disbarment").

## STANDARD OF REVIEW

The Supreme Court of Tennessee "is the source of authority of the Board of Professional Responsibility and all of its functions." *Rayburn v. Bd. of Prof'l Responsibility*, 300 S.W.3d 654, 660 (Tenn. 2009)(citing *Hughes v. Bd. of Prof'l Responsibility,* 259 S.W.3d 631, 640 (Tenn. 2008)); *see also Brown v. Bd. of Prof'l Responsibility*, 29 S.W.3d 445, 449 (Tenn. 2000). "As a part of our duty to regulate the practice of law, we bear ultimate responsibility for enforcing the rules governing our profession." *Mabry v. Bd. of Prof'l Responsibilty*, 458 S.W.3d 900, 903 (Tenn. 2014) (citing *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 469-70 (Tenn. 2003)). "We examine judgments in disciplinary matters in light of our inherent power and essential and fundamental right to administer the Court's rules pertaining to the licensing of attorneys." *Rayburn*, 300 S.W.3d at 660.

"When reviewing a hearing panel's judgment, a trial court must consider the transcript of the evidence before the hearing panel and its findings and judgment."

*Mabry,* 458 S.W.3d at 903 (citing Tenn. Sup. Ct. R. 9, § 1.3). "On questions of fact, the trial court does not substitute its judgment for that of the hearing panel as to the weight of the evidence." *Id.* (citing *Bd. of Prof'l Responsibility v. Allison,* 284 S.W.3d 316, 323 (Tenn. 2009)). Under Rule 9, section 1.3, the trial "court may reverse or modify" a decision of the hearing panel only "if the rights of the petitioner have been prejudiced because the panel's findings, inferences, conclusions, or decisions are":

> (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in light of the entire record.

Tenn. Sup. Ct. R. 9, § 1.3.

If the attorney appeals the discipline first to the chancery court and then to the Supreme Court, "[o]ur standard of review on appeal is the same as that of the trial court." *Mabry,* 458 S.W.3d at 903 (citing *Skouteris v. Bd. of Prof'l Responsibility,* 430 S.W.3d 359, 362 (Tenn. 2014)).[13] Thus, "we will reverse a hearing panel only when the panel's 'findings, inferences, conclusions, or decisions' fall within any of the five circumstances enumerated in the rule." *Rayburn,* 300 S.W.3d at 660 (quoting *Bd. of Prof'l Responsibility v. Love,* 256 S.W.3d 644, 653 (Tenn. 2008); Tenn. Sup. Ct. R. 9, § 1.3). When the first three grounds for reversal are absent, we should uphold the hearing panel "unless the decision was either arbitrary or capricious, characterized by abuse" of discretion or clearly unwarranted exercise of discretion, "or lacking in support by substantial and material evidence." *Id.* (quoting *Hughes,* 259 S.W.3d at 641) (internal

---

[13] Tennessee Supreme Court Rule 9, sections 15.4(b) through (e) (2014), (formerly Rule 9, section 8.4 (2006)), outlines the procedure for situations in which neither party has appealed to the Supreme Court the judgment of the hearing panel or the chancery court, or where the attorney and the Board have reached a settlement. In such cases, there is a different standard of review for this Court:

> Given our inherent authority to enforce the disciplinary rules for the legal profession, the mandate that we review the recommended punishment with a "view to attaining uniformity of punishment," and our ability to modify the judgment of the hearing panel as we deem appropriate, we conclude that our standard of review as to the recommended punishment is de novo.

*In re Walwyn,* 531 S.W.3d 131, 137 (Tenn. 2017) (quoting Tenn. Sup. Ct. R. 9, § 15.4(b) (2014), and citing Tenn. Sup. Ct. R. 9, § 15.4(c) (2014); *Hughes,* 259 S.W.3d at 640).

quotations omitted). Interpretation of a rule of the Tennessee Supreme Court is a question of law, which we review de novo. *Lockett v. Bd. of Prof'l Responsibility*, 380 S.W.3d 19, 25 (Tenn. 2012).

## ANALYSIS

As we have noted, Mr. Hornbeck's appeal centers on the effective date of his disbarment, with an eye toward advancing the date on which he is eligible to apply for reinstatement. The Board argues that the issue of retroactivity is waived because Mr. Hornbeck did not raise it with the hearing panel. The Board cites the general rule in Tennessee that issues not raised in the trial court will not be entertained on appeal. *See, e.g., Welch v. Bd. of Prof'l Responsibility*, 193 S.W.3d 457, 465 (Tenn. 2006).

We disagree. In the proceedings before the hearing panel, Mr. Hornbeck strenuously if fruitlessly sought to avoid disbarment altogether, arguing *inter alia* that his mental state in 2008 was adversely affected by multiple family crises, the metal pipe injury to his head, and the medications he took because of the injury.[14] Mr. Hornbeck was not required to propose in advance of the hearing panel's judgment that any disbarment, if imposed, should be made retroactive to the date of his temporary suspension. Mr. Hornbeck argued for retroactivity in the appeal to the trial court of the hearing panel's judgment of disbarment. Under these circumstances, the question of retroactivity of the disbarment was not waived.

On appeal to this Court, Mr. Hornbeck argues that the judgment of the hearing panel was vague and ambiguous because it did not explicitly state the effective date of his disbarment. This argument is without merit. Prior to the 2014 revisions to Tennessee Supreme Court Rule 9, the effective date of a disbarment order was stated in Rule 9, section 18.5 (2006): "Orders imposing disbarment, suspension, or transfers to disability inactive status are effective on a date ten days after the date of the order, except where the Court finds that immediate disbarment, suspension, or interim suspension is necessary to protect the public."[15] Thus, the Supreme Court's order imposing formal discipline is

---

[14] In deciding the severity of the discipline to impose, the factors the hearing panel should consider include "the lawyer's mental state." ABA Standard 3.0(b).

[15] This rule changed in 2014 and now provides that "[o]rders imposing disbarment . . . are effective upon entry." Tenn. Sup. Ct. R. 9, § 28.1 (2014).

effective ten days after the date on which it is entered. It was unnecessary for the hearing panel to expressly state the effective date of disbarment in its judgment since the effective date is set forth in the rule.

We move on to address Mr. Hornbeck's main argument, that the time he was temporarily suspended from practicing law should be credited to his time as a disbarred attorney. Were we to agree with Mr. Hornbeck, the requisite five years of disbarment before he becomes eligible to apply for reinstatement would run from October 21, 2011, the date he resumed his temporarily suspended status after his disability inactive status was dissolved.[16] *See* Tenn. Sup. Ct. R. 9, § 19.2.

"[T]his Court takes seriously its obligation to supervise and regulate the practice of law." *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 618 (Tenn. 2010). "'The license to practice law in this State is a continuing proclamation by the Court that the holder is fit to be entrusted with professional and judicial matters, and to aid in the administration of justice as an attorney and as an officer of the Court.'" *Bd. of Prof'l Responsibility v. Cowan*, 388 S.W.3d 264, 272 (Tenn. 2012) (quoting Tenn. Sup. Ct. R. 9, § 3.1). As Mr. Hornbeck's case shows, "[a]ttorneys are trusted by the community with the care of their lives, liberty and property with no other security than personal honor and integrity." *Schoolfield v. Tenn. Bar Ass'n*, 353 S.W.2d 401, 404 (Tenn. 1961).

"[A] license to practice law in this state is not a right, but a privilege." *Sneed*, 301 S.W.3d at 618 (citing *Milligan v. Bd. of Prof'l Responsibility*, 301 S.W.3d 619, 630 (Tenn. 2009)). "It is the duty of every recipient of that privilege to act at all times, both professionally and personally, in conformity with the standards imposed upon members of the bar as conditions for the privilege to practice law." Tenn. Sup. Ct. R. 9, § 3.1. "Where this duty is not met, we must act to protect the public." *Cowan*, 388 S.W.3d at 272 (citing *Sneed*, 301 S.W.3d at 618).[17] While the attorney disciplinary process is

---

[16] Over the course of these proceedings, Mr. Hornbeck has changed the date that he claims should be the effective date of his disbarment. Before the trial court, Mr. Hornbeck argued that his disbarment should be retroactive to the date of his initial suspension, December 15, 2008. Before this Court, he has argued that his disbarment should be retroactive to the date he resumed his temporarily suspended status upon the dissolution of his disability inactive status, October 21, 2011. This inconsistency makes no difference to our decision. From either date Mr. Hornbeck has proposed, the five-year period before he can apply for reinstatement has passed, and Mr. Hornbeck would be free to apply for reinstatement now, in 2018.

punitive in some respects, its purpose is to safeguard the administration of justice, protect the public from the misconduct or unfitness of members of the legal profession, and preserve the confidence of the public in the integrity and trustworthiness of lawyers in general.  *See* ABA Standard 1.1.

Serious misconduct by a lawyer warrants either suspension or disbarment.  These two remedies are wholly distinct.  An attorney whose license to practice law is suspended is in a temporary state; to suspend means "[t]o temporarily keep (a person) from performing a function, occupying an office, holding a job, or exercising a right or privilege < the attorney's law license was suspended for violating the Model Rules of Professional Conduct >."  *Black's Law Dictionary 1675* (10th ed. 2014).  Thus, an attorney under suspension remains a member of the bar. Suspension specifically contemplates that, once the conditions imposed under the suspension are met, the attorney will be permitted to return to law practice.

In contrast, disbarment is not a temporary status.  To disbar means "[t]o expel (a lawyer) from the legal profession or bar; to officially revoke the privilege to practice law." *Black's Law Dictionary* 561 (10th ed. 2014).  Revoke, in turn, means "[t]o annul or make void by taking back or recalling; to cancel, rescind, repeal, or reverse." *Black's Law Dictionary* 1515 (10th ed. 2014).  Thus, disbarment "terminates the individual's status as an attorney." Tenn. Sup. Ct. R. 9, § 12.1 (2014).

This difference between suspension and disbarment is reflected in the Tennessee Supreme Court's Rules regarding the two forms of discipline.  The current version of

---

[17] In connection with the disappearance of approximately $4.5 million of the total $5.5 million Mr. Raghavan entrusted to Mr. Hornbeck, Mr. Hornbeck's counsel argued before the hearing panel that Mr. Hornbeck's client was Mr. Raghavan's organization, not Mr. Raghavan himself, so Mr. Hornbeck's actions technically did not harm a client. As this Court has observed, when a lawyer

> is lacking honesty, probity, integrity, and fidelity to trusts reposed in him, it matters not whether the lack of such virtues is revealed in transactions with clients, in the conduct of lawsuits, or any other business dealings or relations.  These qualities are highly essential on the part of those who are to exercise the privileges and responsibilities of members of the bar.  When the lack of them become[s] apparent, no matter what the character of the deal or transaction that may furnish the evidence, it becomes the duty of the court to purge its roster of an unreliable member.

*Schoolfield*, 353 S.W.2d at 404 (quoting *In re Stolen*, 214 N.W. 379, 383 (Wis. 1927)).

Rule 9, as updated in 2014, expressly addresses possible retroactivity of suspension.[18] Tenn. Sup. Ct. R. 9, §12.2(b) (2014). The Rules regarding disbarment contain no such reference. Tenn. Sup. Ct. R. 9, §12.1 (2014). The omission of any reference to retroactivity in the Rules regarding disbarment reflects the fact that disbarment does not contemplate that the disbarred attorney will return to the practice of law. The purpose of disbarring an attorney is to remove from the profession a person who has proven to be unfit or unworthy of being entrusted with the duties and responsibilities accorded to those who have gained the privilege of a law license.

To be sure, Tennessee permits a disbarred attorney to apply for reinstatement of his or her law license.[19] *See* Tenn. Sup. Ct. R. 9, § 19.2 (2006) (stating that a disbarred attorney "may not apply for reinstatement until the expiration of at least five years from the effective date of the disbarment"); Tenn. Sup. Ct. R. 9, § 30.2 (2014) (requiring the same). The possibility of reinstatement, however, does not transform disbarment into a temporary suspension of the license to practice law. Regardless of any hope of reinstatement, disbarment means that the individual has been expelled from the bar in Tennessee and his license to practice law in this State has been terminated.

Mr. Hornbeck contends that it would be arbitrary and capricious for this Court not to credit him for the time he has been on temporary suspension. We think not. A lawyer facing disbarment of course has the right to participate in the appeal process set forth in the Tennessee Supreme Court Rules.[20] Tenn. Sup. Ct. R. 9, § 1.3 (2006); *see also* Tenn. Sup. Ct. R. 9, § 33 (2014). However, the disbarment does not go into effect until after entry of this Court's order, which is delayed while the appeal is ongoing.[21] *See* Tenn.

---

[18] For suspensions, Rule 9 as updated in 2014 states: "No suspension shall be made retroactive, except that a suspension may be made retroactive to a date on which an attorney was temporarily suspended pursuant to Section 12.3 or Section 22 if the attorney was not subsequently reinstated from such temporary suspension." Tenn. Sup. Ct. R. 9, § 12.2(b) (2014).

[19] Most states permit a disbarred attorney to apply for reinstatement after a period of time, but a few states make disbarment permanent in specific instances, with no hope of reinstatement. *See generally* Brian Finkelstein, Note, *Should Permanent Disbarment Be Permanent?*, 20 Geo. J. Legal Ethics 587, 588–90 (2007).

[20] As was the case for Mr. Hornbeck, the lawyer will typically remain suspended until the appeal process is exhausted.

[21] In extremely limited instances, the Court may choose to make a disbarment retroactive. For example, this may occur where there are sequential disbarments, that is, where an attorney has been

- 16 -

Sup. Ct. R. 9, § 18.5 (2006) (disbarment effective ten days after entry of Court's order); *but see* Tenn. Sup. Ct. R. 9, § 28.1 (2014) (providing that, for cases initiated after the effective date of the new Rule 9, "[o]rders imposing disbarment . . . are effective upon entry"). Thus, participation in the appeal process necessarily postpones the date on which the disbarred attorney becomes eligible to apply for reinstatement. The delay in eligibility for reinstatement must be factored into the lawyer's calculus in deciding whether to accept disbarment at the outset or file an appeal.

This Court does not lightly impose on an attorney the sanction of disbarment. In this case, however, it is clearly warranted. "[W]e will uphold the Panel's rulings 'so long as reasonable minds can disagree as to [the] propriety of the decisions made.'" *Bd. of Prof'l Responsibility v. Reguli*, 489 S.W.3d 408, 418 (Tenn. 2015) (quoting *Sallee v. Bd. of Prof'l Responsibility*, 469 S.W.3d 18, 42 (Tenn. 2015)). Disbarment is the only appropriate sanction for the egregious misconduct in which Mr. Hornbeck engaged. We affirm the hearing panel's decision to disbar Mr. Hornbeck and decline his request to make the effective date of his disbarment retroactive to the date of his temporary suspension.

---

disbarred and then additional disciplinary proceedings are instituted for subsequent offenses that also merit disbarment. In such instances, the later disbarment may be made retroactive to the date of the first disbarment. Such sequential disbarments may be imposed in order to enable the victims in the subsequent offenses to qualify for compensation from the Tennessee Lawyers' Fund for Client Protection. *See* Tenn. Sup. Ct. R. 25 (2014).

## CONCLUSION

For the reasons stated above, the judgment of the Davidson County Chancery Court is affirmed and Mr. Hornbeck is disbarred from the practice of law in Tennessee, which disbarment is to be effective ten days after the entry of this Court's disbarment order. *See* Tenn. Sup. Ct. R. 9, § 18.5. The costs of this appeal are taxed to Sean K. Hornbeck and his surety, for which execution may issue if necessary.

_____
HOLLY KIRBY, JUSTICE