IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
January 9, 2019 Session

## JOHN O. THREADGILL v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

**Direct Appeal from the Chancery Court for Knox County**
**No. 194080-3          Douglas T. Jenkins, Chancellor**

———————————————————

**No. E2018-01211-SC-R3-BP**

———————————————————

After attorney John O. Threadgill was convicted of tax evasion, this Court ordered that the Board of Professional Responsibility ("Board") initiate proceedings to determine his final discipline. A hearing panel ("Panel") imposed a final discipline of disbarment. Mr. Threadgill sought review of the Panel's judgment in the Knox County Chancery Court, and the chancery court affirmed Mr. Threadgill's disbarment. Pursuant to Tennessee Supreme Court Rule 9, section 1.3, Mr. Threadgill has appealed the chancery court's judgment to this Court. In this appeal, he argues: (1) that the Panel and the trial court lacked jurisdiction to impose disbarment; (2) that the judgment was unsupported by substantial and material evidence; and (3) that the judgment is contrary to the intent of the American Bar Association guidelines. Following a thorough review of the record and the applicable legal authorities, we affirm the judgment of the Knox County Chancery Court.

**Tenn. Sup. Ct. R. 9, § 1.3 (2006) (currently Tenn. Sup. Ct. R. 9, § 33.1(d) (2018))**
**Direct Appeal; Judgment of the Chancery Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., CORNELIA A. CLARK, SHARON G. LEE, and HOLLY KIRBY, JJ., joined.

John O. Threadgill, Knoxville, Tennessee, pro se.

Krisann Hodges and A. Russell Willis, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility.

**OPINION**

I. Facts and Procedural History

On December 4, 2012, the Board filed a notice of submission with this Court regarding Mr. Threadgill's 2012 conviction for felony income tax evasion. By order entered December 12, 2012, this Court referred the matter to the Board for formal disciplinary proceedings. Following numerous delays, due mostly to Mr. Threadgill's incarceration in federal prison, the Panel conducted a final hearing on this matter on March 20, 2017. After allowing Mr. Threadgill an additional forty-five days after the hearing to file any letters, depositions, or criminal court transcripts, the Panel imposed disbarment.

The underlying facts of this case are as follows. Mr. Threadgill purchased a boat in 1985 with the proceeds of a particularly successful case and operated it as a charter on the east coast. The Internal Revenue Service ("IRS") determined that Mr. Threadgill had not paid appropriate taxes on the income generated by the boat. According to the Sixth Circuit Court of Appeals' opinion affirming Mr. Threadgill's conviction, which was admitted as an exhibit to the final hearing,

> From 1985 to 2004, Threadgill failed to pay $1,437,176 in income taxes owed to the United States Government. During this time period, Threadgill enjoyed a successful, and, at times, lucrative legal career. Threadgill's tax problems began in October 1986 when he reported a total tax liability of $156,680.84 for the 1985 tax year and failed to pay the balance owed. Although he paid the balance in full in June 1987, the IRS conducted an audit of Threadgill's tax return for 1985 and determined that he owed additional taxes. His tax liability increased throughout the 1990s and early 2000s. During that time period, the IRS placed a lien on Threadgill's property, and issued numerous "Collection Due Process Notice of Intent to Levy" letters to Threadgill. As his tax liability continued to increase, Threadgill made multiple offers of compromise to the IRS in an effort to settle his tax liability for significantly lower amounts than owed. The IRS rejected Threadgill's offers, except for one which he withdrew.

*United States v. Threadgill*, 572 F. App'x 372, 375 (6th Cir. 2014). The Sixth Circuit summarized the affirmative acts of tax evasion at the beginning of its opinion:

> With his personal bank account potentially subject to levy by the IRS, Threadgill paid for a variety of personal expenses—including college and private school tuition, country club dues, and travel expenses—out of bank

accounts for his law firm and several nominee trusts. Further, Threadgill titled various assets in the names of nominee trusts and used those trusts to conduct real estate transactions in a purported effort to conceal those assets from the IRS. After rejecting Threadgill's numerous offers to compromise his tax liability, the IRS initiated a multi-year investigation into Threadgill's finances. Based on the results of that investigation, the Government charged him in a single-count indictment with attempting to evade or defeat the payment of a tax in violation of 26 U.S.C. § 7201.

*Id.* at 374. The jury convicted Mr. Threadgill as charged, and the Sixth Circuit affirmed the sufficiency of the evidence supporting each affirmative act of tax evasion charged in the indictment. *Id.* at 375, 380-85.

At the final hearing, the Board adduced proof of Mr. Threadgill's history of disciplinary actions. The chancery court summarized this history in its opinion affirming the Panel's decision:

The Board presented evidence at the hearing of this matter regarding six sanctions against Mr. Threadgill by the Supreme Court of Tennessee. Such sanctions were as follows:

a. 1994 – private informal admonition;
b. 2000 – private informal admonition;
c. 2009 – one year suspension;
d. 2010 – informal admonition;
e. 2012 – disbarment; and
f. 2012 – second disbarment.

The sanctions set forth above were based, in part, on findings of plagiarism, misappropriation of monies belonging to a client or third-party, and charging an unreasonable fee.

At the final hearing, Mr. Threadgill provided some explanation for his criminal conviction, and he stated that the conduct underlying the conviction occurred before his first disbarment.[1] Mr. Threadgill maintained his position that his criminal conduct had not been proven. In his testimony, he said that his first tax attorney told him that he could

---

[1] Mr. Threadgill's first disbarment was due to his misappropriation of client funds and commingling client, personal, and business funds, *inter alia*. His second disbarment was because he misappropriated client funds and practiced law while suspended, *inter alia*.

- 3 -

settle with the IRS for "ten cents on the dollar" but then told Mr. Threadgill he would have to handle the compromise himself. Mr. Threadgill said that he made several offers of compromise over the next twenty years. When the IRS began a criminal investigation, Mr. Threadgill said that an IRS attorney in Washington, D.C., reviewed his case, closed the file, and destroyed his records. Mr. Threadgill further stated that when a new presidential administration came into office, his file was reopened and he was indicted. He said that his attorney would not let him testify at his trial, but if he had testified, he would have explained that the situation with the real estate was simply good estate planning.

Mr. Threadgill testified at the final hearing that his incarceration had caused him to miss many important events in his family's life and led to his divorce. He explained that the reason he was contesting the instant disciplinary proceedings was to protect the reputation of his children, especially of those with careers in politics and the legal profession. He testified that he had been rehabilitated and desired to provide pro bono legal services in South Carolina, where two of his children lived. The rector of his church also testified that Mr. Threadgill was active in the church, had continued tithing to the church even while incarcerated, and had been rehabilitated. After the hearing, Mr. Threadgill presented additional character testimony from another Episcopal priest who had counseled with Mr. Threadgill throughout his criminal and disciplinary proceedings; a college friend who also attended Mr. Threadgill's church; a lawyer who mentored Mr. Threadgill's son and opined that Mr. Threadgill's disbarment would negatively impact that son's career; and Mr. Threadgill's daughter, Alana Threadgill Armstrong, who described how Mr. Threadgill had worked hard to benefit those around him while incarcerated and stated that Mr. Threadgill would be moving to South Carolina to be close to her and her older brother. Mrs. Armstrong also stated that Mr. Threadgill's disbarment would negatively impact the legal career of one of her brothers.

On May 22, 2017, the Panel entered its ruling imposing disbarment. In its ruling, the Panel considered the applicable standard from the American Bar Association Standards for Imposing Lawyer Sanctions, ABA Standard 5.1.[2] The Panel also found

---

[2] 5.1 Failure to Maintain Personal Integrity

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit, or misrepresentation:

5.11 Disbarment is generally appropriate when:

that five aggravating factors and two mitigating factors applied. The five aggravating factors included Mr. Threadgill's prior history of discipline, his dishonest or selfish motives, a pattern of misconduct, his substantial experience in the practice of law, and underlying illegal conduct. The mitigating factors included his good character and reputation and his previous incarceration for his misconduct. The Panel considered ABA Standard 5.11, which states that disbarment is the appropriate sanction for serious criminal conduct. Mr. Threadgill then filed a Petition for Review on July 10, 2017, in the Knox County Chancery Court. On June 7, 2018, the chancery court affirmed the hearing panel's judgment. Mr. Threadgill filed a notice of appeal to this Court on June 29, 2018.

## A. Standard of Review

As this Court stated in *Mabry v. Board of Professional Responsibility*:

> The Tennessee Supreme Court is the source of authority for the Board and its functions. *In re Vogel*, 482 S.W.3d 520, 530 (Tenn. 2016) (citing *Long v. Bd. of Prof'l Responsibility*, 435 S.W.3d 174, 178 (Tenn. 2014)). "As a part of our duty to regulate the practice of law in this state, we have the ultimate disciplinary responsibility for violations of the rules governing our profession." *Hughes v. Bd. of Prof'l Responsibility*, 259 S.W.3d 631, 640 (Tenn. 2008) (citing *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 469-70 (Tenn. 2003)). We examine disciplinary judgments pursuant to this Court's "inherent power" and "essential and fundamental right" to enforce the rules regulating the practice of law. *Vogel*, 482 S.W.3d at 530 (quoting *Hughes*, 259 S.W.3d at 640). Our standard of review is the same as that of the trial court, [*Skouteris v. Bd. of Prof'l Responsibility*, 430 S.W.3d 359, 362 (Tenn. 2014) (citing *Hoover v. Bd. of Prof'l Responsibility*, 395 S.W.3d 95, 103 (Tenn. 2012)),] generally giving deference to the hearing panel's weighing of the evidence and reversing the hearing panel's decision only when the decision is

---

a.  a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

b.  a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

(1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

*Mabry v. Bd. of Prof'l Responsibility*, 563 S.W.3d 192, 194 (Tenn. 2018) (quoting Tenn. Sup. Ct. R. 9, § 33.1(b) (2006)) (citing *Long*, 435 S.W.3d at 178).

## B. Jurisdiction

Mr. Threadgill's first argument is that the Panel did not have jurisdiction to hear his case because he had been disbarred twice before his conviction. He admitted at his hearing, however, that the conduct underlying the conviction occurred prior to his first disbarment. The Board responds that the Tennessee Supreme Court has jurisdiction over all lawyers admitted to the bar in the state and that the Panel's jurisdiction was derived from the Supreme Court's jurisdiction via its order initiating disciplinary proceedings.

Tennessee Supreme Court Rule 9, as it was effective during the underlying proceedings, stated that

[a]ny attorney admitted to practice law in this State and any attorney specially admitted by a court of this State for a particular proceeding is subject to the disciplinary jurisdiction of the Supreme Court, the Board of Professional Responsibility, the district committees and hearing panels hereinafter established, and the circuit and chancery court.

Tenn. Sup. Ct. R. 9, § 1.1 (pre-2014).[3]

There is no question that during the time period in which Mr. Threadgill committed the affirmative acts underlying his felony conviction, he was an attorney admitted to practice law in this state. His subsequent disbarment in an unrelated matter

---

[3] Under the current version of Rule 9, this issue would be entirely untenable because the current rule specifically includes within the Court's jurisdiction disbarred attorneys with respect to acts committed prior to disbarment. *See* Tenn. Sup. Ct. R. 9, § 8.1 (2018).

does not remove him from the jurisdiction of this Court for conduct occurring while he was a practicing attorney. Mr. Threadgill claims that the conviction itself is the crucial point for determining jurisdiction, but clearly under the facts of this case, the actual crime was committed many years prior to his conviction and during the time period that he was a practicing attorney. His conviction is considered proof that the crime was committed. *See* Tenn. Sup. Ct. R. 9, § 14.3 (pre-2014). His argument is without merit.

### C. Sanction Supported by Substantial and Material Evidence

Mr. Threadgill next argues that there was no proof presented that he deserved further punishment. Essentially, he maintains that his other disbarments and his incarceration were sufficient punishment. The Board responds that there were multiple sources of evidence establishing his criminal conduct and that the ABA Standards provide that disbarment is the appropriate sanction for his conduct.

At the hearing, Mr. Threadgill stipulated to his conviction and that the conviction constituted a serious crime. The Sixth Circuit's opinion affirming Mr. Threadgill's conviction, admitted into evidence by the Panel, further established the underlying facts of Mr. Threadgill's conviction.

The parties generally agree that ABA Standard 5.1 provides that disbarment is the appropriate sanction, but Mr. Threadgill insists that he has been punished enough and that a third disbarment will not harm him but instead harm his family. First, we note that his prior disciplinary actions were not related to the present proceeding and actually operate as aggravating factors that support the imposition of the sanction in this case. *See* ABA Standard 9.22(a). Second, this Court has previously upheld a disbarment in another case involving a conviction for tax evasion. *See Bd. of Prof'l Responsibility v. Cowan,* 388 S.W.3d 264, 268-69 (Tenn. 2012) ("We have little difficulty concluding that a 'person who willfully attempts in any manner to defeat or evade any tax,' 26 U.S.C. § 7201, necessarily engages in 'intentional conduct involving dishonesty . . . that seriously adversely reflects on a lawyer's fitness to practice law.'" (quoting ABA Standard 5.11 (b)).

Finally, this Court previously considered and rejected the argument that an attorney had been punished enough by his criminal sanctions. *Id.* at 271. The ABA Standards provide that "[t]he purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession." ABA Standard 1.1. "The need to protect the public from attorneys unfit to practice law is not abated merely because criminal penalties have already been imposed." *Cowan*, 388 S.W.3d at 271. This Court

has recognized that "[w]hile the attorney disciplinary process is punitive in some respects, its purpose is to safeguard the administration of justice, protect the public from the misconduct or unfitness of members of the legal profession, and preserve the confidence of the public in the integrity and trustworthiness of lawyers in general." *Hornbeck v. Bd. of Prof'l Responsibility*, 545 S.W.3d 386, 396-97 (Tenn. 2018) (citing ABA Standard 1.1).

Mr. Threadgill insisted that he will never practice law again, but he also stated that he wished to offer pro bono legal advice in South Carolina under a pro bono license available in that state. His testimony at the hearing indicated that he frequently offered legal advice to fellow inmates during his incarceration. Mr. Threadgill stated that no clients were harmed by his criminal conduct, but there was also evidence presented that Mr. Threadgill used his law practice to further his goal of hiding income from the IRS. Taking all the evidence into consideration, we believe that there is still a need to protect the public from Mr. Threadgill's misconduct and to preserve the confidence of the public in the legal profession. Therefore, disbarment was the appropriate sanction in this case.

D. Prospective Application of the Sanction

For his final argument, Mr. Threadgill asks that this Court impose his disbarment retroactively. Under the version of Rule 9 effective for this case, section 18.5 provides that "[o]rders imposing disbarment, suspension, or transfers to disability inactive status are effective on a date ten days after the date of the order, except where the Court finds that immediate disbarment, suspension, or interim suspension is necessary to protect the public." The current Rule 9 provides that attorneys disbarred on the basis of a criminal conviction can receive credit for the temporary suspension generally ordered by this Court upon notice of the criminal conviction but that disbarment must be served consecutively to any term of incarceration. *See* Tenn. R. Sup. Ct. 9 § 22.5 (2018). However, this Court did not suspend Mr. Threadgill in this case because he was already doubly disbarred. In addition, Mr. Threadgill was incarcerated until December 2016, and the final hearing was much delayed because Mr. Threadgill was not able to participate telephonically in a hearing and refused to proceed based on stipulations and briefings. This Court in *Hornbeck* noted that the delay in the imposition of a disbarment due to an appeal should play into an attorney's "calculus in deciding whether to accept disbarment at the outset or file an appeal." *Hornbeck*, 545 S.W.3d at 398. We also noted in *Hornbeck* that disbarments are sometimes made retroactive when there are sequential disbarments, such as when sequential disbarments are required for victim compensation reasons. *Id.* at 398 n.21. While this is Mr. Threadgill's third disbarment, it is wholly unrelated to the previous two disbarments and thus not a sequential disbarment. Mr. Threadgill has provided no other basis for this Court to order his disbarment to be imposed retroactively.

While we have some sympathy for Mr. Threadgill's age and his family's situation, this was a serious offense in a long line of egregious misconduct. In addition, we are concerned by Mr. Threadgill's failure to show any remorse for his criminal conduct, his continual blame-shifting and excuses, and his continued desire to provide legal advice. We therefore conclude that his disbarment should not be retroactive.

## CONCLUSION

For the reasons stated above, the judgment of the Knox County Chancery Court is affirmed and Mr. Threadgill is disbarred from the practice of law in Tennessee, which disbarment is to be effective ten days after the entry of this Court's disbarment order. *See* Tenn. Sup. Ct. R. 9, § 18.5 (2006). The costs of this appeal are taxed to John O. Threadgill and his surety, for which execution may issue if necessary.

_____
ROGER A. PAGE, JUSTICE